# Thomas v. The State.

*Indictment for Murder; Motion to Quash Venire.*

1. *When a statute not amendatory in a constitutional sense although its caption declares it so to be.*—A statute which is original in form, complete and intelligible of itself does not offend Sec. 2 of Art. IV of the Constitution, although its cap-

[Thomas v. The State.]

tion asserts that it is an amendatory act, and although the act which it purports to amend is not published at length, and although some one or more of its provisions may have the effect to change or modify some portion of the prior act—that portion of the caption declaring the act amendatory may be rejected as surplusage.

2. *Statutes which amend others by implication not within the meaning of the Constitution.*—Statutes which amend others by implication are not within the provision of the Constitution which requires that an amended act should be set out in full.

3. *When caption of an act in general terms sufficient.*—If all of the provisions of a statute are within the subject and scope and meaning of its caption, the Constitution is not offended because the caption is couched in general terms.

4. *Where a special statute refers for the manner of its execution to an existing general law; the latter is not thereby incorporated in the special act so that it must be set out as an amended act.* A general law does not become an amended act in the sense of Sec. 2, Act. 1V of the Constitution because a special act refers to it for the manner in which the special act is to be executed.

5. *Venire when not to be quashed.*—A venire for the trial of a capital felony is not to be quashed because of a mistake in the names of two of the regular jurors summoned for the week. Code, Sec. 5007.

6. *Excusing jurors summoned in a capital case; when not error.* It is not error for the court to excuse regular jurors whose names are on the venire served on the defendant in a capital case, when the order of the court shows they were excused for "sufficient cause shown to the court." Nor is it error for the court to excuse from service special jurors because they were too sick to serve on the jury.

.7. *Local law not repealed by the adoption of the Code.*—A local law was not repealed by the adoption of the Code of 1896. Sec. 10, Code 1896.

8. *Refusal of special charge when proper.*—It is a sufficient reason to justify the refusal of a special charge requested by a defendant, when a word is omitted which must be inserted to make it intelligible. Charges must be given or refused in the terms in which they are written. Sec. 3328 of Code.

9. *Affirmative charge when properly refused.*—Where the evidence afforded an inference to be drawn by the jury that a conspiracy existed between the defendant and others who participated with him in shooting at the deceased, or that it was their common purpose to take his life, the affirmative charge asked by the defendant was properly refused, although the shot fired by him did not take effect.

4

10. *Abstract charge properly refused.*—An abstract charge requested by a defendant in a criminal case is properly refused. *Query*: whether a defendant may of right request a special charge, when the jury has returned into court for further instructions after having retired to consider their verdict.

11. *Remarks of the judge to the jury what reversible error.*—Where a jury having in charge a criminal case requests the court to discharge them as they could not agree, it is error for the presiding judge to remark to them, "that he appreciated the inconvenience to which they had been put, and considering the condition of the weather he thought they had suffered long enough, and would discharge them, but it was not in his power to do so, unless the defendants would consent to their discharge, and that up to that time they had refused to do so, as they had a right to do."

APPEAL from the City Court of Montgomery.

Tried before Hon. A. D. SAYRE.

Daniel Thomas and Dave Williams were jointly indicted for the murder of Albert Harris. Daniel Thomas moved to quash the venire, but the causes assigned therefor and the rulings thereon are sufficiently set forth in the opinion.

The evidence tended to show that there was a party and dance at a certain house in Montgomery county, and that Dave Williams and one Jerry Williams became involved in a difficulty growing out of insulting language used by the former to a sister of the latter; and that Jerry ran Dave out of the house into the yard and at the same time called to Albert Harris to bring him his pistol. That Daniel Thomas said to Jerry Williams not to have any fuss, as Dave Williams was his cousin and would apologize, and that the apology was made.

Meantime Albert Harris came up and gave the pistol to Jerry who turned to go back into the house. That Albert Harris remarked: "If I had known you were not going to shoot the son of a bitch I would have shot him myself," and further said "What son of a bitch don't believe I will shoot him, let him open his head," and put his hand towards his hip pocket and started away, and as he did so Daniel Thomas moved towards him and said "Oh, go on man; we don't want to have any fuss." That thereupon Albert Harris turned upon him with his hand on his hip pocket and said, "You son of a bitch, you

[Thomas v. The State.]

don't believe it, do you?" That Pink Thomas had meantime stepped up and was in the rear of Daniel Thomas, and putting a shot gun over Daniel's shoulder fired on Albert. That immediately after the shooting Harris turned to run and was fired at twice by Daniel and once by Dave with pistols. That the pistol shots did not take effect, but Harris was killed by the shot of Pink Thomas. The statements about the action of Harris is putting his hand to his pocket was contradicted. There was evidence of a conversation after the shooting between Daniel Thomas and Dave Williams in which Daniel said, "We all shot," and Dave replied, "But the gun did the work." There was also evidence that when Jerry started back to the house Harris went with him and that Daniel, Pink and Dave followed them, and that when Pink shot the other two fired in quick succession. Charges 2 and 4 requested by the defendant are as follows:

2. "Daniel Thomas ought to be found guilty of murder in either degree, or of manslaughter in either degree unless the evidence in the case satisfies you beyond a reasonable doubt," etc.

4. "I charge you gentlemen of the jury that if you believe from all the evidence that defendant Daniel Thomas fired a pistol at Albert Harris, unless the ball or bullet from said pistol struck the said Albert Harris, or contributed to his death, you cannot find said Daniel Thomas guilty of homicide in any degree, unless you further find from all the evidence that there a prearrangement or agreement between the defendant Daniel Thomas and Pink Thomas to take the life of Albert Harris or to do him some great bodily harm."

The remarks made by the judge to the jury to which reference is made in the opinion are set out in the head note No. 11.

JACK THORINGTON, for appellant, cited, on the motion to quash the venire, *Ryan v. State*, 100 Ala. 105; *Thomas v. State*, 94 Ala. 74; *Jackson v. State*, 77 Ala. 18; *Evans v. State*, 80 Ala. 6; *Bates v. State*, 118 Ala. 102; *Bolling v. LeGrand*, 87 Ala. 482; *Bay Shell Road Co. v. O'Donnel*, 87 Ala. 376. On the refusal of charges

2 to 4 inclusive, *Tally v. State,* 102 Ala. 25; *Cabbell v. State,* 46 Ala. 195; *Tanner v. State,* 97 Ala. 7.

CHAS. G. BROWN, Attorney-General, for the State, cited, *Rathborne v. Kiowa County,* 27 C. C. A. 480; *State v. Wallace,* 94 N. C. 828; 108 N. P. C. 401; *Baker v. State,* 26 So. Rep. 197.

TYSON, J.—Under the provisions of the act approved Dec. 11, 1890, the judge of the city court of Montgomery county, whenever he deems it proper to set two or more capital cases for trial on the same day or for the same week of the term, may draw and have summoned one jury or one venire for the trial of all such cases so set down for the same day or week.—Acts 1890-1, p. 204.

Objection is made to the constitutionality of this act upon two grounds—first, that it is an amendatory statute and offends that clause of the constitution that "no law shall be revived, amended or the provisions thereof extended or conferred by reference to its title only; but so much thereof as is revived, amended, extended or conferred, shall be re-enacted and published at length;" second, that the caption does not clearly express the subject matter of the act and the subject matter of the body of the act is not germane to the subject expressed in is title.—Sec. 2 of Art. IV of the constitution.

The title of the act is in the following language: "To amend an act entitled an act to *more effectually* secure competent and well qualified jurors in the county of Montgomery, approved February 21, 1887." Reference to the act of Feb. 21, 1887, (Acts 1886-7, p. 190) discloses that it contains eighteen sections. By it, a complete system is provided for the securing of competent and qualified grand jurors as well as petit jurors for the trial of all causes by the circuit and city courts to be held in Montgomery county. The only section of this act, which the act of Dec. 11, 1890, proximately or remotely affects is section 10. Section 10 provides: "That when any capital case or cases stand for trial, the court must, on the first day of the term, or as soon thereafter as practicable, make the order required by section (4874) four thousand eight hundred and seventy-four of

the Code of Alabama (1876), and shall then in open
court, cause to be drawn from said jury box the number
of names required, with the regular jurors summoned
for the week set for the trial, to make the number named
in said order, and shall cause an order to be issued to
said (the) sheriff to summon said persons therein
named to appear in court on the day set for the trial of
said defendants, and must cause a list of the names of
al the jurors summoned for the week in which said trial
is set, and of those drawn, as provided in this section,
together with a copy of the indictment, to be forthwith
served on the defendant by the sheriff, and the defend-
ant shall not be entitled to any other or further notice of
the jurors summoned or drawn for his trial, nor of the
charge or indictment upon which he is to be tried; *Pro-
vided,* that if, at the time appointed for the trial of the
capital case, a jury should not be made up of those sum-
moned and appear, the court shall draw from the petit
jury box a sufficient number of names to complete said
jury; *Provided,* that should any juror so drawn reside
more than two miles from the court house, the said juror
may, in the discretion of the presiding judge, be relieved
from attendance on said trial. In addition to the chal-
lenges for cause, allowed by law, the defendant shall
have the right to peremptorily challenge twelve such ju-
rors, and the State eight of them."

It may be well to observe that section 4874 of the
Code of 1876 above referred to in the section quoted sim-
ply provides for the summoning of not less than fifty nor
more than one hundred persons including those sum-
moned on the regular juries for the week or term, when
the term does not exceed one week.

The grounds of objection to the constitutionality of
the act of 1890 were raised by motion to quash the venire
served upon the defendant because there was a joint
drawing of the venire for the trial of this case and sev-
eral other causes, set for trial during the same week of
the court. It may be and doubtless is true, that under
the provisions of section 10 above quoted that an order
could not be made for a joint drawing of the names of
persons to serve as special jurors for the trial of two per-
sons separately indicted, and to this extent the act of

[Thomas v. The State.]

1890 may be in a sense said to amend it, or rather to cure that defect in it. It was doubtless on account of the decision in the case of *Evans v. The State,* 80 Ala. 4, that this curative statute was passed.—Lomax's Dig. §§ 64, 65, pp. 529, 530.

The act of 1890 is original in form, complete and intelligible of itself and does not fall within the spirit and meaning of the constitutional provision prohibiting the amendment of a law by reference to its title only, etc. As said in *Ex parte Pollard,* 40 Ala. 98, the constitutional provision in question "reaches those cases where the act is strictly amendatory or revisory in its character. Its prohibition is directed against the practice of amending or revising laws by additions or other alterations, which without the presence of the original are usually unintelligible."

Chief Justice BRICKELL, in the case of. *The State ex rel. etc. v. Rogers et al.,* 107 Ala. 454, speaking of this constitutional provision, said : "This clause of the constitution, like the preceding clause relating to titles has been the subject of frequent judicial construction. Its purposes and scope were explained by Cooley, J., in *People v. Mahoney,* (13 Mich. 481) : 'This constitutional provision must receive a reasonable construction, with a view to give it effect. The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another in an act or section which was only referred to but was not re-published, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the constitution wisely prohibited such legislation. But an act complete in itself is not within the mischief designed to be remedied by this provision, and cannot be held to be prohibited by it without violating its plain intent.' "

In *Ex parte Pollard, supra,* it is said : "It was never intended by the constitution that every law which would affect some previous statute of variant provisions on the same subject should set out the statute or statutes so affected at full length. If this were so, it would be impossible to legislate."

Again, it should be observed that statutes which amend others by implication are not within this provision; and it is not essential that they even refer to the acts or sections which by implication they amend. Cooley's Const. Lim. (6th ed.) p. 182.

For aught that appears from the language of the body of the act assailed, it can be said with as much plausibility, that it was its purpose to amend section 4874 of the Code of 1876, so far as the county of Montgomery is concerned.

But aside from all this, the act under consideration, both as to the question under discussion and as to its title, in so far as its constitutionality is here involved, is practically the same as the one reviewed by this court in the case of *Gandy v. The State,* 86 Ala. 20. Without extending this opinion to the length of setting out the title to that act and its provisions for the purpose of showing the analogy of the questions there decided by the court and the questions here involved, we will content ourselves by saying that the principles announced by the court in that case are conclusive against all the objections raised to the constitutionality of this act, except perhaps the one urged that the subject-matter of this act is not germane or cognate to the subject expressed in its title. Under the influence of that decision the words "To amend an act entitled an act approved Feb'y 21, 1887," found in the caption of this act are to be treated as surplusage and will be rejected as such. These words do not change the purpose of the law, nor destroy the unity of the subject. "The law, as it was, before the new act, would have been incidentally amended, whether the title had so proclaimed it or not." Eliminating these words, the caption of the act would read, "To more effectually secure competent and well qualified jurors in the county of Montgomery." Any means which the legislature in their judgment should adopt to more effectu-

ally secure competent and well qualified jurors would certainly come within the subject of this title. We are clearly of the opinion that there is no merit in the contention on this point, and for this reason decline to discuss it at length.

Nor can section 10 of the act of Feb. 21, 1887, be successfully assailed as unconstitutional because reference is made in it to section 4874 of the Code of 1876 for the purpose of carrying into effect some of its provisions. In *State v. Rogers, supra,* quoting from the case of *People v. Banks,* 67 N. Y. 575, it is said: " 'By such a reference the general statute is not incorporated into or made a part of the special statute. The right is given, the duty declared, or burden imposed by the special statute, but the enforcement of the right or duty, and the final imposition of the burden are directed to be in the form and by the procedure given by the other and general laws of the State. Reference is made to such laws, not to affect or qualify the substance of the legislation or vary the terms of the act, but merely for the formal execution of the law. The evil in view in adopting this provision of the constitution was the incorporating into the acts of the legislature by reference to other statutes, of clauses and provisions of which the legislators might be ignorant, and which affecting public or private interests in a manner and to an extent not disclosed upon the face of the act, a bill might become a law, which would not receive the sanction of the legislature if fully understood.' "

The insistence that the venire should have been quashed because of a mistake in the names of two of the regular jurors summoned for the week, and served upon the defendant, would doubtless be meritorious were it not for section 5007 of the Code. Under this section, which is applicable and in force in Montgomery county, since no one of the special laws regulating the securing of jurors for the trial of criminal cases in that county in anywise repeals it, there was no error in overruling the motions to quash the venire.—*Jones v. The State,* 104 Ala. 30; *Roberts v. The State,* 68 Ala. 156.

The action of the court in excusing Toole, Smith, Thomas, Whiting, Jackson and Snell, from attendance

upon the court as regular jurors for the week, without the knowledge or consent of the defendant and in his absence, notwithstanding their names were on the venire served upon him, is not error, as the order of the court shows that they were excused for "sufficient cause shown to the court."—*Moseley v. The State*, 107 Ala. 74, and authorities therein cited.

Nor can it be affirmed that the court committed an error in excusing the special jurors Murrell and Lide from further attendance upon the court on the day preceding the trial of this cause, on account of being too sick to serve on the jury. From a recital in the record, it appears that these jurors were excused by the court at their own request after satisfying the court by evidence of their illness and that its character was such as rendered them unable to perform the duties of a juror. These two jurors were doubtless in attendance upon the court on the day they were excused, as special jurors in another capital felony set for trial on that day. Or for that matter, it appears from the recitals in the judgment entry that this case was set for trial for the 15th of August and continued from day to day until the 18th, when the trial was begun. So it may be said that they were in attendance upon the court on the day preceding the trial of this case for the purpose of rendering services as jurors in this case.

The act approved Dec. 8, 1894, (Acts 1894-5, pp. 33, 34), entitled "An act to amend section 4331 of the Code of Alabama so far as the same relates to Montgomery county," is a local law and was not repealed by the adoption of the Code of 1896.—§ 10, Code 1896. It being in force, it is not a ground of challenge for cause of a juror, that he is not a resident householder or freeholder of the county for the last preceding year.

It is a sufficient reason to justify the refusal of charges numbered 2 and 4 requested by the defendant, to say, that a word was omitted from each, which must be inserted to make them intelligible. In charge 2 the word "not" would have to be inserted, and in charge 4 the word "was" or "existed." This, the court was under no duty to do or to have done. Charges must be given or refused in the terms in which they are written, is the mandate of the statute.—§ 3328 of Code.

The evidence afforded an inference to be drawn by the jury. that a conspiracy existed between the defendant and the others who participated with him in shooting at the deceased, or it was their common purpose to take his life. The affirmative charge was properly refused.— *Pierson v. The State*, 99 Ala. 148.

Charge 3 requested by the defendant required his acquittal, unless in fact he contributed to the death of the deceased. In other words, because the shot fired by him at deceased was inaccurately aimed and went wide of the mark, he should not be convicted, notwithstanding the jury may have believed there was a conspiracy between all the parties who fired at the deceased to take his life, and the shot fired by only one of them was effectual. This is not the law and the charge was correctly refused.

Pretermitting a decision of the question of the right of the defendant to request charges in writing to be given by the court to the jury, when they return into court for further instructions, after having retired to consider their verdict, suffice it to say, that the charge requested in this case was abstract, and should have been refused had it been requested in the first instance.

There is a recital in the record that other charges were asked by the defendant at the same time, that this one was requested, but it does not appear that they were in writing, nor are they set out in the record.

The remarks made by the judge to the jury in response to their application to be discharged, when taken in connection with the fact that he required the defendant, in their presence, to either consent to or refuse to agree to their discharge, under the circumstances shown, were prejudicial to the defendant. The defendant was not required by law to make any response involving his consent or refusal to the discharge of the jury, but had the right to say nothing on this question. The conclusion is irresistible under the facts, that the jury must have attributed their further retention for deliberation solely to the action of the defendant in refusing to give his consent to their discharge. It was error for the court to put the defendant in this predicament before the jury,

[Turner v. The State.]

by putting the *onus* upon him of refusing to enter into this consent.

For this error the judgment must be reversed and the cause remanded.

Reversed and remanded.