11   322
14   120

11   322
135S  131

### [No. 1363.]

## MAHER v. SHULL ET AL.

1. MECHANICS' LIENS—STATUTORY CONSTRUCTION.

Where under the mechanic's lien statute it is sought to make one person liable for the debt of another, the statute must be strictly construed, and the party claiming the lien under the statute must bring himself clearly within its provisions.

2. SAME—REPUTED OWNER.

Where the owner of a mining claim entered into a contract with S., whereby he was to convey to S. an undivided one-half interest in the claim upon the completion by S. of a certain amount of development work, S. was not the owner, or reputed owner, or agent of the owner of the property, as contemplated in sec. 1, page 316, Laws, 1893, such as would give a mechanic's lien on the property to laborers doing work on the mine under a contract from S.

*Error to the District Court of Lake County.*

Mr. N. ROLLINS, for plaintiff in error.

Mr. JOHN M. MAXWELL and Mr. John A. EWING, for defendants in error.

WILSON, J., delivered the opinion of the court.

This was an action to enforce a mechanic's lien for work done upon a mining claim. The facts material to a determination of the issue are undisputed, and are in fact admitted by the pleadings. Defendant Galloway was the owner of an undivided three fourths of the Oxford mining claim, and had a lease upon and option to purchase the remaining one-fourth interest. While so possessed of the property, he entered into a written contract with his codefendant Shull to sell to him an undivided one-half interest in said claim, and in his lease and option upon the one-fourth interest. By the terms of the contract, the consideration of the sale was that Shull should within a certain time expend the sum of $3,500 in the

development of the mining claim, in such manner as he, Shull, should see proper. It was also agreed that Galloway should execute a deed to Shull for the one-half interest so agreed to be sold, and deposit the same in escrow upon condition that it be delivered to Shull upon full compliance by him with the covenants and agreements upon his part set forth in the contract. Upon the day following the execution of this contract, Shull entered into a written agreement with John R. Curley and Joseph Curley, whereby the latter agreed to sink the shaft then existing upon the mining claim to a further depth of 150 feet, and Shull agreed to pay then therefor at the rate of $12.00 per foot, payment to be made as each fifty feet of increased depth was attained, less twenty-five per cent of the amount due. When only thirty feet of increased depth had been attained, the Curleys abandoned the contract. Thereupon, the plaintiff for himself and as assignee for others who performed work and labor upon the shaft under employment from the Curleys, filed his claim of lien upon the property and instituted this suit to enforce the same. The defendants in their answer set up the contract of sale between themselves, and also the contract between Shull and the Curleys, and alleged that at the time of the execution of the latter contract, and at the time of the performance of the work for which a lien was claimed, defendant Shull had no right, title or interest in the mining claim, except as he might acquire an interest in said property by a full compliance with the terms of the contract between him and Galloway. They denied that any of the work was done under or pursuant to any contract between the defendants, or between them and the Curleys, except under the contract entered into by the latter with defendant Shull. It was denied that any indebtedness then existed on the part of defendant Galloway, but it was admitted that defendant Shull owed a balance of $220 under his contract with the Curleys, and also the sum of $14.00 due to plaintiff by Shull for a few days' work done by him at the latter's instance. These two sums of money defendant Shull by his answer offered to pay.

Plaintiff replied, admitting the allegations of the answer as to the ownership of the property, and also the contract between Galloway and Shull, but charged that said contract had not been filed for record with the recorder of the county. When the case came up for trial, judgment was rendered upon the pleadings in favor of plaintiff and against defendant Shull for $14.00, in favor of the Curleys and against Shull for $220, and in favor of plaintiff and against the Curleys for the full sum claimed to be due by the lien statements. It was further found and adjudged that defendant Galloway was not indebted to the plaintiff in any sum of money whatever, and that plaintiff was not entitled to a lien upon the mining claim. Plaintiff seeks to reverse this judgment, and for this purpose brings the case here on error.

As will be readily seen from this statement of fact, the principal question presented for determination is whether or not the plaintiff was entitled to hold and claim a lien. It is contended in his behalf that the contract entered into between Galloway and Shull was such as came within the provisions of the mechanic's lien statutes enacted in 1893, and that by the failure to have the same recorded, the property became subject to a lien for the work done upon it in pursuance of Shull's contract with the Curleys. That portion of these statutes which is pertinent to this claim of plaintiff, reads as follows:

" In case of a contract for the work, between the reputed owner and a contractor, the lien shall extend to the entire contract price, and such contract shall operate as a lien in favor of all persons, except the contractor, to the extent of the whole contract price; and after all such liens are satisfied, then as a lien for any balance of the contract price in favor of the contractor. All such contracts shall be in writing, when the amount to be paid thereunder exceeds five hundred dollars, and shall be subscribed by the parties thereto, and the said contract, or a memorandum thereof, setting forth the names of all the parties to the contract, a description of the property to be affected thereby, together with a

statement of the general character of the work to be done, the total amount to be paid thereunder, together with the times or stages of the work for making payments, shall, before the work is commenced, be filed for record in the office of the county recorder of the county where the property is situated, in case such contract is not filed for record as above, the labor done and materials furnished by all persons aforesaid, except the contractor, before such contract or memorandum is filed, shall be deemed to have been done and furnished at the personal instance of the owner, and they shall have a lien for the value thereof." Laws, 1893, page 316, sec. 1.

We cannot agree with this contention. It is conceded that plaintiff would have no right to claim a lien upon the property, and would have no claim against Galloway unless it is given to him by the provisions of this statute. In such case, it is incumbent upon him to bring himself clearly within its terms. These cannot be extended by implication so as to embrace within them and render liable a person who was in no sense a party to the contract under which the work was done. In such case, also, the statute itself must be strictly construed, when under cover of its provisions, as in this case, it is sought to make one person liable for the debt of another. This principle has been clearly enunciated and well settled by the adjudications of this court and of the supreme court. *Rice v. Carmichael*, 4 Colo. App. 86; *Adkison v. Hardwick*, 12 Colo. 581; Potter's Dwar. Stat. 275.

Counsel insist, and cite Colorado authoriries in support of their claim, that mechanic's lien statutes should be liberally construed. In *Cary Hardware Co. et al. v. McCarty et al.*, decided by this court at its last September term, we took occasion to say that the remedial portions of mechanic's lien statutes should be liberally construed, but that the other parts, those upon which the right to the existence of a lien depended, being in derogation of the common law, should be strictly construed. This, we said, was in our opinion a correct exposition of the law, as sustained by principle and by the great weight of authority, and was the doctrine laid

down by the Colorado adjudications. We see no occasion to recede from the position there taken, or change the opinion there expressed. That part of the statute in question is not remedial in its nature, but pertains wholly to the acquirement of a lien. It says that in a certain contingency, under a certain condition of facts, a right to a lien shall accrue. Unquestionably, therefore, under the settled law of this jurisdiction, the law under which the right is claimed must be strictly construed, and the claimant must be held to a strict compliance with its provisions, before the lien can be held to attach.

It will be observed that the statute which we have quoted, and under which plaintiff claims, requires that "all such contracts shall be in writing when the amount to be paid thereunder exceeds five hundred dollars," and shall be recorded. The word *such* must refer to contracts previously mentioned, and those are described in the preceding sentence. This reads, "In case of a contract for the work between the reputed owner and a contractor, the lien shall extend to the entire contract price, and such contract shall operate as a lien in favor of all persons, except the contractor, to the extent of the whole contract price." The contracts therefore referred to, and which must be recorded, are those entered into between the reputed owner and a contractor, in which certain work is contracted to be done and a certain price is contracted to be paid. That such contracts only were contemplated by the statute is manifest from the provisions of the second section of the act. "Sec. 2. No part of the contract price, shall, by the terms of any such contract, be made payable, nor shall the same, or any part thereof, be paid in advance of the commencement of the work, but the contract price shall, by the terms of the contract, be made payable in installments, or upon estimates, at specified times after the commencement of the work, or on the completion of the whole work; provided, that at least fifteen per cent. of the whole contract price shall be made payable at least thirty-five days after the final completion of the contract." In the case at bar, the contract between Gal-

loway and Shull possesses no element of the contracts described in the act. By its terms, nothing was to be paid by Galloway, the owner, but the work was to be done by Shull, at his expense, in payment of a consideration for purchase. Moreover, Shull was not the reputed owner. He did not appear so by record, nor were there any allegations in the pleadings that he even claimed to be when he made the contract with the Curleys. On the contrary, it is alleged and not denied, that the Curleys had full knowledge of the provisions of the contract between Galloway and Shull. In fact, one of them signed the contract as an attesting witness.

Neither can it be allowed that the plaintiff acquired any right to a lien by the failure to record the contract between Shull and Curley Brothers, for the reason that Shull was not the owner or reputed owner or agent of the owner of the property.

California has a lien statute somewhat similar to that under consideration, and in support of his position counsel for plaintiff cites two authorities from that state. *Kellogg et al. v. Howes et al.*, 81 Cal. 170; *Lumber Co. v. Gottschalk et al.*, 81 Cal. 641. These cases are not in point, and do not touch the question here at issue. In neither of these cases did the question arise as to whether the contract under consideration came within the purview of the statute, and were such as it required to be recorded.

Plaintiff asserts in his brief that "by the failure to record the contract between Galloway and Shull, Shull became the agent of Galloway, and his acts in the premises became the acts of Galloway." He contents himself, however, with the bare statement of his proposition, and does not seek to maintain it by any argument. We wholly fail to see the force of the statement. If Galloway or his property is responsible, it results entirely from the express provisions of the statute. We do not see how the statute could change the relationship existing between the two parties.

For the reasons stated, we think that the contract between Galloway and Shull was not within the terms of the mechan-

ic's lien statutes, and that the plaintiff had no right to a lien upon the mining claim. The court did not err in its judgment, and it will be affirmed.

*Affirmed.*