[No. 7856.]

## GRIMM v. YATES.

1. MECHANICS LIENS—*A Creature of Statute,* and can be enforced only in cases within the statute and by those persons to whom the statute plainly gives the right. (273)

2. ——*Notice of Non-Liability from Land Owners—When Required.* The purpose of Rev. Stat. Sec. 4029 is to require the land owner, where another in possession is making improvements not authorized by any agreement between them, to give notice to those performing the labor, or furnishing the material, that his interest is not to be subjected to any lien therefor. Where the work is such as is authorized by agreement between the land owner and the person at whose instance such work is performed, and is not such as entitles those performing it to a lien under the other provisions of the statute, the estate of the land owner does not become chargeable by his failure to give the notice. (279)

3. ——*Work Upon Mines—At Instance of Lessee.* Section 4028 of the Revised Statutes does not entitle those performing ordinary development work, at the instance of a lessee, merely in order to extract the ore which the mine contains, to a lien upon the estate of the lessor. (274)

A bond conditioned for the conveyance of a mine recited that the obligee should be entitled to immediate possession, should commence work on the premises by a day named, "and work the same continuously, in a thorough and workmanlike manner," depositing in a specified bank, to the credit of the obligee, a certain percentage of the values extracted, "all shaft work  *  *  *  to be substantially timbered  *  *  *  and all drifts where reasonably necessary." The work done by the obligee was that usually performed for extracting ores. *Held* that, as against the mine owner those performing the work were not entitled to a lien under this section of the statute. *Pike v. Empfield* 21 Col. App. 161, and *Clark Co. v. Centennial Co.* 22 Col. App. 174, distinguished. (269, 275, 280)

*Error to Boulder District Court.*—Hon. H. P. BURKE, Judge.

Mr. HARRY E. KELLY, Mr. CHARLES H. HAINES, for plaintiff in error.

Mr. F. G. FOLSOM, for defendant in error.

The question presented is the right of defendant in error to a lien under the mechanic's lien act, sections 4025, et seq., R. S. 1908, awarded him by the trial court upon the Herald Mining Claims, the property of plaintiff in error. For convenience we shall refer to the latter as defendant, and the former as plaintiff, that being their relation in the court below.

About July 1, 1908, defendant entered into a written agreement with John M. Yates, whereby he agreed to sell the latter the property involved for a sum specified, and to execute and deposit with the First National Bank of Boulder, in escrow, a deed conveying the property to Yates, which was to be delivered on the payment of the purchase price. In this contract, plaintiff was designated the party of the first part, and Yates as party of the second part, and provided that; "Whereas the said party of the first part has further agreed to place the said party of the second part or his assigns, in full and peaceable possession of said property, to mine, remove and sell ore therefrom; the said party of the second part or his assigns to commence work on said premises before the fifteenth day of July, A. D. 1908, and thereafter to work the same continuously in a thorough and workmanlike manner, employing at least two (2) men underground, working at least twenty-five (25) shifts to the man each calendar month, and to permit the party of the first part to have access to all parts of said property at all times, and to allow no person not in privity with the parties hereto to take or hold possession of said property, or any part thereof, under any pretense whatever, and during the continuance of this bond and lease to deposit in said First National Bank to the credit of said party of the first part twenty (20) per cent. of the

net smelter or mill returns of all ore taken from said property, as and when received, said sum so deposited to be a part payment of said purchase money, and to deposit in connection therewith a duplicate copy of mill and smelter settlement sheets for all ore shipped from said property, within ten (10) days from the date of such shipment. All shaft work done in connection with this contract to be substantially timbered in a workmanlike manner, and all drifts shall be timbered when reasonably necessary. * * *

"Now, therefore, the condition of the above obligation is such that if said party of the second part, or his assigns, shall fail to comply with the terms of the aforesaid agreement or any of them, time being of the essence hereof, and if the said party of the first part shall well and faithfully perform the same, then this obligation shall be null and void, otherwise remain in full force and effect, and in case of such failure all sums deposited as aforesaid shall be retained by the said party of the first part as liquidated damages and the party of the second part shall forthwith surrender possession of said premises."

Under this agreement Yates worked the properties from July 1, 1908, to the 19th day of April, 1910, when he assigned it to the Herald Mines Company, a corporation, which at once entered into possession of the mines, and worked them until February 11, 1911. Plaintiff and others who assigned their accounts to him, worked in and upon the mines for this company. These accounts not having been paid, plaintiff filed his lien statement, claiming a lien upon the mining property.

In his complaint to foreclose plaintiff alleged that between dates named, which vary from the 12th day of December, 1910, to the 11th day of February, following, his respective assignees, including himself, rendered

services for the Herald Mines Company in working, operating and developing the property under bond and lease, and stated the sum due each for this work. He further alleged that during these periods the Herald Mines Company operated the property with the full knowledge and consent of the defendant, and that he did not give the notice required by section 4029, R. S. 1908. The answer put in issue the allegation of the knowledge of defendant that the property was being operated by the Herald Mines Company, or that it was developing or improving the property, and set out *haec verba* the instrument to which we have referred.

The replication of plaintiff alleged that the property was improved by the Herald Mines Company by means of shafts, tunnels, inclines, adits, drifts, and other improvements thereon, and that plaintiff and his assignors performed labor upon these improvements.

At the trial it was admitted that the notice mentioned in section 4029 was not given by the defendant. The testimony, in addition to the execution of the bond and lease, established that the work for which the lien was claimed was performed by the plaintiff and his assignors, at the instance of the Herald Mines Company, in the different capacities of engineer, trammer, operating machine drills, timbering, working on the hoist, blacksmithing, sorting ore, superintending, stoping or breaking down ore above the two levels, drifting on the vein for an ore-chute, making an up-raise for ventilation, a cross-cut in the foot wall, and a station. The ore broken was sorted and sold. In short, all the work performed by the plaintiff and his assignors was of the character usually done in the ordinary course of mining for commercial purposes.

It appears that all drifting was in and along the vein at the 150 foot level. What is termed an up-raise was nothing more than a stope, except possibly in one

place, a connection was made between the roof of the stope and the level above, by an excavation for ventilation which extended a few feet from the top of the stope. The timbering was in the stope.

The character of the work during the period for which the lien is claimed is described by the witness, Yates, as follows: (quoting from the abstract) "I am familiar with all the work that was done on this property from December 1st, to February 11th, it was what I consider ordinary mining work, drifting and stoping. Practically all that was done was just such work as was necessary to reach and remove the ore that was taken out by the Herald Mines Company."

Mr. JUSTICE GABBERT delivered the opinion of the court:

Section 1, of our lien act, session laws 1899, 261, being section 4025 R. S. 1908, provides, so far as material to consider, that: "Mechanics, material men, contractors, sub-contractors, builders, and all persons of every class performing labor upon or furnishing materials to be used in the construction, alteration, addition to, or repair, either in whole or in part, of any building, * * * tunnel, * * * or any other structure or improvement, upon land, * * * shall have a lien upon the property upon which they have rendered service or bestowed labor * * * for the value of such services rendered or labor done * * * whether at the instance of the owner or of any other person acting by his authority or under him, as agent, contractor or otherwise; for the work or labor done or services rendered * * * by each respectively, whether done or furnished or rendered at the instance of the owner of the building or other improvement, or his agent; and every contractor, architect, engineer, sub-contractor, builder, agent or other person

having charge of the construction, alteration, addition to, or repair, either in whole or in part, of any building or other improvement, as aforesaid, shall be held to be the agent of the owner for the purpose of this act." Section 4 of the act, being section 4028, *ibid*, provides: "The provisions of this act shall apply to all persons who shall do work.  *  *  *  as provided in section 1 of this act, for the working, preservation, prospecting or development of any mine, lode or mining claim or deposit yielding metals or minerals of any kind or for the working, preservation or development of any such mine lode or deposit, in search of any such metals or minerals; and to all persons who shall do work  *  *  *  upon, in or for any shaft, tunnel, mill or tunnel site, incline adit, drift or any draining or other improvement of or upon any such mine, lode, deposit or tunnel site;  *  *  *  and provided, further, That this section shall not be deemed to apply to the owner or owners of any mine, lode, deposit, shaft, tunnel, incline, adit, drift or other excavation, who shall lease the same in small blocks of ground in areas, whether of surface or beneath the surface, not to exceed 150 feet in length by the width of the claim and for a depth of 150 feet or less to one or more sets of lessees."

Liens of the character under consideration are purely creatures of statute. They neither exist nor can be enforced, except in cases falling within its purview and only those persons whom the statute plainly gives the right to a lien can acquire it. Such has been the uniform ruling of this court and the Court of Appeals.

Section 8 of the lien act as it existed prior to the act of 1899, and as amended, session laws, 1895, 202, was substantially the same as section 4028, supra. Under that section it was held in *Wilkins v. Abell*, 26 Colo. 462, that the purpose of section 8, when read in connection

with other provisions of the lien act, or which it formed a part, was to give a lien on mining property upon the same conditions that a lien attaches to other property, for services rendered the owner, or some one of the enumerated persons acting for him, as his agent, but that the lessee of a mining claim was not one of such persons, for the reason that the lessee is not employed by the lessor to do any work for him, as by the demise to the lessee he acquires a qualified interest in the property leased, which entitles him to work the same for his own benefit. This ruling was followed in *Antlers Park R. M. Co. v. Cunningham,* 29 Colo. 284, 68 Pac. 226, and *Williams v. Eldora Enterprise G. M. Co.,* 35 Colo. 127, 83 Pac. 780. In the latter case *Maher v. Shull,* 11 Colo. App. 322, 52 Pac. 1115; *Schweizer v. Mansfield,* 14 Colo. App. 236, 59 Pac. 843, and *Little Valeria M. & M. Co. v. Ingersoll,* 14 Colo. App. 240, 59 Pac. 970, where substantially the same ruling was announced, were cited with approval. In the Wilkins case, it was also contended that by virtue of the proviso included in section 8, passed in 1895, the owner of the fee was liable for work performed at the instance of the lessee unless the lessor leased the mine "in small blocks of ground to one or more sets of lessees." Passing upon this question it was held that: "The office of a proviso is not to enlarge or extend, but rather to put a limitation or restraint upon the language which the lawmaker has used in the body of the act. It excepts something from, but adds nothing to the act;" and therefore the proviso of itself could not be construed to give any lien that did not exist by virtue of the affirmative provisions of the act.

Following the cases above cited, we think it is clear that under section 4028, a lien in favor of the plaintiff cannot be established, because the work he and his as-

signors performed was done at the instance, and for the benefit, of the Herald Mines Company, whose relation to the defendant was that of lessee only, and that the proviso in that section cannot be construed to give a right to a lien in such circumstances. Neither does the fact that the instrument, executed by the defendant, was a bond and lease change the situation. The Mines Company was not in possession by virtue of the option to purchase, but under a contract of leasing and solely for the purpose of working the property under the lease, at a stipulated rent in the nature of royalty. The portion of the instrument which may be denominated a bond or option to purchase did not require the vendee to make any improvements. The only condition imposed upon the lessee by the lease was that work should be commenced within a time specified, and thereafter work the property continuously, in a thorough and workmanlike manner, employing not less than two men underground, working at least 25 shifts to the man each calendar month, and that all shaft work done should be substantially timbered in a workmanlike manner, and all drifts timbered when reasonably necessary. According to the testimony, the work performed by the plaintiff and his assignors was of the character usually done in the ordinary course of mining. A lessee of a mine must at least do ordinary development work in order to extract the ore it contains and to extract it necessarily requires work to be done upon the mine. This character of work, when performed at the instance of the lessee does not under the sections of the lien act so far considered, give the parties performing such work any right to a lien upon the fee of the lessor. Such is the ruling in the Williams case, where that question is fully discussed.

This brings us to a consideration of the question of whether the failure of the defendant to give the notice

mentioned in section 4029, R. S. 1908, subjects his interest in the property to a lien in favor of the plaintiff. That section provides: ''Any * * * tunnel, * * * and every structure or other improvement mentioned in the preceding sections of this act, constructed, altered, added to, * * * or repaired, either in whole or in part, upon or in any land, within the knowledge of the owner or reputed owner of such land, * * * shall be held to have been erected, constructed, altered, * * * repaired, or done at the instance and request of such owner or person, but so far only as to subject his interest to a lien therefor as in this section provided; * * * unless such owner or person, shall, within five days after he shall have obtained notice of the erection, construction, alteration, removal, addition, repair or other improvement, aforesaid, give notice that his interests shall not be subject to any lien for the same, by serving a written or printed notice to that effect, personally upon all persons performing labor or furnishing skill, materials, machinery or other fixtures therefor, or shall, within five days after he shall have obtained the notice aforesaid, or notice of the intended erection, construction, alteration, removal, addition, repair or other improvement aforesaid give such notice as aforesaid by posting and keeping posted a written or printed notice to the effect aforesaid, in some conspicuous place upon said land or upon the building or other improvement situate thereon. Provided, That this section shall not apply to co-owners of unincorporated canals, ditches, flumes, aqueducts, and reservoirs not (nor) to the enforcement of chapter 116 of the session laws of Colorado of 1893; And, provided, further, that the provisions of this section shall not be construed to apply to any owner or person claiming any interest in such prop-

erty who shall have contracted for any erection, struc-
ture or improvement mentioned in this act."

The important question is in what circumstances
must the owner of property give the notice required by
this section in order to protect his fee from being sub-
jected to a lien for the character of improvements therein
mentioned.   Clearly, if the owner has entered into a
contract to have such improvements constructed, which
under the provisions of the lien act would subject his fee
to a lien therefor, he cannot prevent the lien attaching
by giving notice that his interest in the property shall
not be subject to a lien for such improvements.   That
would defeat the very purpose of the lien act, which by
preceding provisions, care has been taken to prevent.
Evidently the purpose of the section is to require an
owner, where another in possession of his property is
making improvements, which by the terms of the agree-
ment between the owner and the party in possession, the
latter is without authority to make, to give notice to
those performing labor, or furnishing materials for such
improvements, within five days after he shall have ob-
tained knowledge that they are being constructed, that
his interest in the property, upon which such improve-
ments are being placed, shall not be subject to any lien
therefor, and that his failure to do so renders his inter-
est subject to a lien for such improvements.   That this
is the manifest purpose of the section is plain from its
provisos, which are to the effect, that it shall not apply
to an owner who has contracted for such improvements,
nor the owners of unincorporated canals, ditches, flumes
and reservoirs, nor to the enforcement of chapter 116,
session laws of 1893.   Turning to that chapter we find
it provides, that co-owners of unincorporated ditches,
except as therein limited, shall pay for the necessary
cleaning and repair of such ditches, in the proportion

that their respective interests bear to the total expenses incurred in doing that character of work, and that the owners performing such work shall have a lien upon the interest of a delinquent co-owner, for his proportion of such cost and expenses. These provisos make it clear that by the section it was not intended to allow an owner, by posting notices, to relieve his property from a lien attaching for improvements, when by virtue of his contract with the person making them, his property under the lien act, is subject to a lien therefor, and that its object was to estop the owner from asserting that unauthorized improvements were not made at his instance and request, if constructed with his knowledge, unless he gives the notice required by the section. In brief, the purpose of the section was to give a lien for improvements not authorized by any contract between the owner and the person at whose instance they are being constructed, when by his seeming acquiescence through silence, it would be inequitable to relieve his property from a lien for such improvements. Such, in effect, is the construction given the section under consideration by our Court of Appeals in *Fisher v. McPhee-McGinty Company,* 24 Colo. App. 420, 135 Pac. 132. In that case, one French, agent for the lessee, was in possession of property under a lease from Mrs. Fisher, and made improvements on the property which were not authorized by the lease. The lessor, however, through her agent had knowledge that such improvements were being made, and failed to give the notice required by section 4029. The parties making these improvements or furnishing materials therefor, sought to enforce liens against the premises upon two grounds, (1) because the owner, expressly or impliedly, through a tenant, contracted for the materials furnished and the labor performed and (2) that the improvements upon the premises for which liens were

claimed could be enforced upon the fee of the owner because they were made with her knowledge and she failed to notify the lien claimants that her interest would not be subject to the liens. Speaking to the first point, the court, through King, J. said. "Unless so provided by the terms of the lease, the lessee is in no sense the agent or superintendent of the lessor, nor is he a contractor for the lessor, within the contemplation of the lien statute. The owner of property cannot be bound, nor his property charged with a lien by the unauthorized act of the lessee in having improvements made on the leased property," and concluded by stating in substance that as the improvements were unauthorized, liens would not attach under the general provisions of the mechanic's lien act. Speaking to the second point, which involved a construction of section 4029, it was said: "This section charges land with a lien for the cost of any building constructed thereon or altered, added to or improved, with the knowledge of the owner, if he shall not have contracted therefor, but from which lien so charged he may be relieved by compliance with the statutory requirements as to notice."

None of the work performed by plaintiff and his assignors was unauthorized by the instrument executed by the defendant under which the Mines Company was working the mines. Hence the defendant was not required to give the notice mentioned in section 4029, and his failure to do so did not subject his interests to the lien claimed. All work was performed at the instance of the Herald Mines Company, whose interest in the properties involved, and relation to the defendant, Grimm, was that of lessee only, and was of that character in fact, and by the terms of the lease, for which a lien will not attach to the fee of the owner. Conse-

quently, it follows that plaintiff is not entitled to any lien upon the interest of Grimm in the mines.

Counsel for plaintiff rely upon *Pike v. Empfield,* 21 Colo. App. 161, 120 Pac. 1054, and *Clark Hardware Co. v. The Centennial T. M. Co.,* 22 Colo. App. 174, 123 Pac. 322. The former case is based upon the ground that as between the owner and the party at whose instance the work was performed, for which the lien was claimed, the relation of vendor and vendee existed, as the latter bound himself to purchase the property, and hence, the case was ruled by *Shapleigh v. Hull,* 21 Colo. 419. In the Clark Hardware case the decision was based upon the allegations of the complaint, to the effect that the materials furnished the lessee were used for the working, preservation, prospecting and development of the property involved, thereby enhancing its value, with the knowledge of the owner, who failed to post the notice mentioned in section 4029. To this complaint a general demurrer had been interposed, and it was held that as against such demurrer the complaint stated a cause of action for a lien under the provisions of section 4029. The case is so construed by the same court in *Milwaukee Gold Mining Company v. Tompkins-Cristy Hardware Company,* 141 Pac. 527.

Other questions are argued in the briefs of counsel for defendant, which it is not necessary to consider. Cross-errors are also assigned on behalf of plaintiff, but as none of the questions thus presented are material to the grounds upon which our decision is based, they need not be passed upon.

The judgment of the District Court, in so far as it awards a lien upon the fee of the defendant, is reversed, and the cause remanded with directions to dismiss the action as to him.

Judgment reversed and cause remanded with directions.

Decision *en banc.*

Mr. Justice Hill dissents.