## No. 12,644.

### Moul *v.* Thompson et al.
#### (14 P. [2d] 1004)

Decided September 19, 1932.

Messrs. Sarchet & McClain, Mr. James E. Garrigues, for plaintiff in error.

Mr. Roy O. Sampson, Messrs. Hindry, Friedman & Brewster, for defendants in error.

*In Department.*

Mr. Justice Burke delivered the opinion of the court.

These parties appeared in reverse order in the trial court and are hereinafter referred to as there, or by name. The Western Columbia Laundry Company is referred to as the Western Company, the Zott Laundry Company as the Zott Company and the Independent Investment Corporation as the Investment Company.

Plaintiffs charged that defendant took and converted $1,500 worth of their personal property, and they demanded judgment accordingly. Defendant denied generally and set up a counterclaim as to which assignments and briefs are silent, and which will not therefore be further noticed. Plaintiffs, by replication, denied generally, and by amendment thereto pleaded estoppel. The cause was tried to the court, which found generally for plaintiffs and gave them judgment for $1,020. To review that judgment defendant prosecutes this writ.

The questions here presented are: (1) The admissibility of certain evidence admitted over defendant's objection; (2) the character, i. e., real or personal, of the property involved; (3) the validity of the plea of estoppel. Preliminary to a discussion of these questions, and essential to a comprehension thereof, the following facts are noted.

The Western Company was a ''one-man corporation,'' and that man was Moul. It held title to certain real estate, the building thereon, the laundry business operated therein, and all the machinery, fixtures and personal property used in that operation. One day this company transferred the land, improvements and enumerated fixtures to Moul, who then and there leased it back to the company. Some months later Moul gave Zott, or the Zott Company, an option (not abstracted) to lease the premises and purchase certain of the property. The option was taken up by the Zott Company and the

Western Company was dissolved by Moul. Some years later the Zott Company borrowed $9,000 of the Investment Company and secured the loan by a chattel mortgage on all its personal property used in operating its laundry. Within a few months the Zott Company went into bankruptcy and said mortgage was foreclosed. Plaintiffs bought at that foreclosure sale for $7,000 and, evidencing their purchase, received a bill of sale (not abstracted). Moul was present at that sale and silent. When plaintiffs began to remove their property a dispute arose between them and Moul as to what their purchase included. As a result thereof Moul padlocked the building to maintain the status quo. This suit followed. The property in question is thus described: "Two blowers or ventilators in rear wall; one stone sink and piping connected therewith; two overhead water tanks and I-beam foundation therefor, and parts and piping leading to and from the same; parapets, signs and sign boards on roof; all conduit piping and electric wiring leading from the marble switchboard in the engine room to three switchboxes on back wall of premises, and from such boxes to all motors and machinery or to where such motors and machinery were formerly located, said conduit piping and electric wiring constituting the entire power and transmission lines; said three switchboxes; all steam and water pipe lines leading from the Kewanee boiler for the purpose of running the laundry and other machinery, being the heat presses and mangles and furnishing heat and water for the washing machinery; all piping and pipe lines of whatsoever nature or description pertaining to the transmission equipment." All this property was installed for and used in the operation of the laundry business. Moul's bill of sale to the Zott Company included "all piping pertaining to above equipment * * * and fittings of all description pertaining to and used in the operation of any and all above equipment." The chattel mortgage of the Zott Company to the Investment Company included "blowers," "ventilating fans,"

"electrical equipment," "signs," "overhead tanks and all other tanks." At the foreclosure sale the description in the mortgage was read aloud and heard by Moul.

1. The evidence objected to consisted of Thompson's statement that the property in question formed a part of the basis of his bid; the testimony of Wicker as to the custom in the sale of second hand laundry equipment; and the testimony of two witnesses as to what, in their opinion, was included in the bill of sale. Thompson's testimony was proper under his plea of estoppel, because if the property in question formed no part of the basis of his bid he was not injured by Moul's silence and the plea was unsupported. The other witnesses qualified as experts and their testimony was proper to enable the court to determine how the parties to a document of doubtful meaning probably understood its terms at the time of its execution.

2. It is undisputed that the property in question might be, for the purposes of this suit, either real or personal, depending upon the reason for its installation and use, its adaptability to other than the laundry business, and the class to which it was mutually assigned by those who dealt with it. 11 R. C. L., p. 1061, §5; also §§6, 14, 18, 20 and 28 Id.; *Booth v. Central Savings Bank,* 58 Colo. 519, 146 Pac. 240. It is also undisputed that, if originally real, its character might have been changed to personal by the acts of Moul. 26 C. J., p. 691, §68. Admitting these propositions and the admissibility of the evidence mentioned in paragraph 1, supra, the most that can here be said in favor of defendant is that the character of this property was in doubt and was determined by the trial court on conflicting evidence, and under a well established rule that determination cannot be interfered with here. *Ehrenkrook v. Ehrenkrook,* 90 Colo. 437, 9 P. (2d) 610.

3. The trial court's findings being general and all presumptions being in favor of the judgment, the plea of estoppel, while not specifically mentioned, stands sus-

tained. We have no doubt that this property was covered by the chattel mortgage. When Moul stood by and saw it sold to plaintiffs, his attention was called to his right to object, if he owned it, by a similar objection then and there made by another. Moul alleges that this property was worth $1,500, but he held his peace while plaintiffs invested their money on the good faith of the mortgage. Hence all the elements of estoppel are present, and, having remained silent when duty required him to speak, defendant will not be heard to speak when justice requires him to be silent. *Southern Surety Co. v. Peterson*, 86 Colo. 350, 354, 281 Pac. 746; *Griffith v. Wright*, 6 Colo. 248.

The judgment is affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE HILLIARD concur.