No. 16,308.

STAPP ET AL. *v*. CARB-ICE CORPORATION ET AL.
(224 P. [2d] 935)

Decided July 29, 1950.

Mr. JULIUS I. GINSBERG, Mr. C. R. FROMAN, for plaintiffs in error.

Mr. LOUIS G. ISAACSON, Messrs. HUGHES & DORSEY, Mr.

W. Clayton Carpenter, for defendant in error Colorado Ice and Cold Storage Company.

Mr. Thomas Keely, Mr. Allan R. Phipps, for defendant in error bank.

Mr. Louis G. Isaacson, for trustees of the Braukman Trust Fund.

*En Banc.*

Mr. Justice Jackson delivered the opinion of the court.

This case involves two questions, the effectiveness of foreclosure of a mechanic's lien as against (I) chattel property becoming a part of a manufacturing plant and then subsequently included in a chattel mortgage, and (II) real estate of a landlord upon which lessee, by the express and approving provisions of his lease, had caused a plant to be erected. The parties appear here in the same order as in the trial court.

The complaint discloses that the Stapp Engineering Company, a copartnership, entered into a contract with the Carb-Ice Corporation "to design, build and construct a plant to produce liquid and solid carbon dioxide using boiler flue gases as a source of the basic material," the plant to be constructed on real estate owned by the Colorado Ice and Cold Storage Company upon which property the Carb-Ice Corporation had a twenty year lease.

The engineering company sued Carb-Ice for an alleged balance due on this construction contract, claiming that the total cost of material furnished and labor performed was $278,435.16, that Carb-Ice had paid $263,684.57, thus leaving a balance due of $14,750.59 plus interest from the 3rd day of July, 1948. The merits of the controversy between these two primary contracting parties is not before us.

The basis for this litigation was laid when Stapp Engineering Company filed a mechanic's lien against the property of Carb-Ice Corporation to secure the above mentioned sum alleged to be due from Carb-Ice. Subsequently, Stapp Engineering Company sought to foreclose this lien and asked that the claim of each of the other defendants named in the action "be adjudged subsequent, inferior to, and subject to the lien of the plaintiffs, and that they be barred from ever asserting any right, title or interest in and to said property or any portion thereof as against the plaintiffs." All defendants moved that the cause be dismissed on the ground that the complaint failed to state a claim upon which relief could be granted. This motion was granted as to all defendants except Carb-Ice. Plaintiffs then were allowed to file an amended complaint. The trial court granted similar motions to dismiss as to this amended complaint, again excepting defendant Carb-Ice. The losing plaintiffs come here, filing ten specifications of points which involve the two questions set forth at the beginning of this opinion.

The agreement of lease, shown in the complaint, was dated July 24, 1947, ran to July 24, 1967, and contained an option to renew for an additional twenty years to July 24, 1987. It also contained the following preamble: "Whereas, Second party [Carb-Ice] contemplates the construction of a plant for the manufacture of dry ice and desires to lease the hereinafter described real estate from First Party [Colorado Ice and Cold Storage Company] for the purpose of erecting thereon a plant for the manufacture of dry ice, and further desires to purchase from First Party steam and flue gas produced by First Party for use in the manufacture of said dry ice at said plant, and First Party is willing to make such lease and sell such steam and flue gas upon the terms and conditions hereinafter set forth."

The third paragraph of the lease reads: "3. The parties hereto have examined and approved the plans for the

construction of said plant of Second Party for the manufacture of dry ice, as prepared by The Stapp Engineering Company; and said plans bear thereon the signatures of the parties hereto for the purposes of identification and evidence of their approval. Second Party agrees at its own expense to proceed promptly to construct and complete upon the demised premises a structure substantially in accordance with said plans so approved, provided, however, that no substantial change therein shall be made without first securing the written approval of First Party thereto."

The fourth paragraph of the lease contained, inter alia, a provision that: "4. Second Party shall use the leased premises solely for the purposes of manufacture, sale and distribution of dry ice and liquid carbon dioxide * * * "

The sixth and seventh paragraphs of the amended complaint read as follows: "6. That The First National Bank of Denver, a Colorado corporation, claims some right, title and interest in and to the manufacturing plant, machinery and premises by virtue of a certain chattel mortgage recorded February 3, 1948, Book C184 at page 491, in the Office of the County Clerk and Recorder of the City and County of Denver, State of Colorado.

"That said mortgage was received by defendant, The First National Bank of Denver with full knowledge that the *items* included therein *were a necessary part of the plant and machinery necessary to the successful operation of the whole plant of the defendant, Carb-Ice Corporation's dry ice plant,* and with full knowledge that *all of the parts of said plant were essential to the operation of some part or all of the machinery in the plant and that the machinery in said plant was physically attached to the freehold; and that said items in said chattel mortgage enhanced the value of said plant, without which said plant would be valueless,* and further said items of property had been personally contracted for by the plaintiff, paid for by the plaintiff, as well as all costs of con-

**530**

struction, costs of machinery, equipment and parts for the manufacturing plant listed in the chattel mortgage above referred to were paid for by the plaintiff, and the plaintiff at no time had ever given a bill of sale thereto or released plaintiff's interest in and to said property." (Italics supplied.)

"7. That Theodore H. Braukman and C. A. Braukman, as Trustees for the Braukman Trust Fund, claim some right, title and interest in and to the plant, building and machinery located upon the premises herein described, by virtue of the chattel mortgage recorded in Book C197 at page 68 in the Office of the Clerk and Recorder of the City and County of Denver; and that the said Theodore H. Braukman and C. A. Braukman, as Trustees for the Braukman Trust Fund, accepted said chattel mortgage on the 26th day of August, 1948, with full knowledge that the plaintiff claimed title to the *personalty* used in the construction of, and made a part of, the plant of the Carb-Ice Corporation and which had become permanently attached and affixed thereto and made a part of the premises; and further said defendant knew that the said plaintiff had not been paid in full by the defendant, Carb-Ice Corporation, for the costs of construction, machinery, equipment and parts of the manufacturing plant listed in chattel mortgage above referred to, and that the time for filing of the mechanics lien had not expired.

"That all of the *items of personal property* mentioned in the chattel mortgage above referred to *were used in the permanent construction of the dry ice manufacturing plant* and were purchased in the name of and by the plaintiff, and that the plaintiff had not conveyed or released said property to the defendant, Carb-Ice Corporation or The First National Bank of Denver or Theodore H. Braukman and C. H. Braukman, as Trustees for the Braukman Trust Fund or The Colorado Ice and Cold Storage Company, and that all of said items enhanced the value of said plant *and without said articles the plant would be valueless.*" (Italics supplied.)

■ (I) With respect to the rights of the chattel mortgagees, both sides agree "that if the property listed in the chattel mortgage is personal property no mechanics lien would lie against the property, nor could it be enforced." In the words of counsel, "the position of the chattel mortgagee is that there is nothing in the record before this court to show that the property listed in the chattel mortgage is other than personal property." Counsel accordingly object to Stapp Engineering Company's counsel using the description *the plant* in their several references to the articles covered by the chattel mortgages. But disposition of this case was based solely upon the pleadings, and the only pleading before us is the complaint filed by Stapp Engineering Company. We must assume the truth of the statements contained in that complaint, which discloses that the contract entered into by Carb-Ice was to "design, build and construct *a plant;*" that the items included in the chattel mortgage running to The First National Bank of Denver were a necessary part of *the plant* and machinery required for the successful operation of the whole *plant* of defendant, Carb-Ice, and that this chattel mortgage was received by the bank with full knowledge that all parts of said *plant* were essential to the operation of some part or all of the machinery *in the plant,* and that the machinery *in said plant* was physically attached to the freehold and that said items in said chattel mortgage enhanced the value of *said plant.*

Likewise, in respect to the chattel mortgage accepted by the trustees of the Braukman Trust Fund, there is an allegation that plaintiff partnership, Stapp Engineering Company, "claimed title to the personalty used in the construction of and made a part of the *plant* of the Carb-Ice Corporation and which had become permanently attached and affixed thereto and made a part of the *premises;* * * * That all of the items of personal property mentioned in the chattel mortgage above referred to were used in the permanent construction of the *dry*

*ice manufacturing plant,* \* \* \* and that the plaintiff had not conveyed or released said property to" any "of the defendants, and that all of said items enhanced the value of said *plant,* and without said articles *the plant* would be valueless." (Italics supplied.)

It further appears from the complaint that both chattel mortgages were executed and delivered *after* the items described in them had become "a part of the machinery in said plant, or had been used in the permanent construction of the dry ice manufacturing plant."

This, then, is not like the case of *Razatos v. Daniels & Fisher Stores Co.,* 110 Colo. 105, 131 P. (2d) 417, where we held that, "One who purchases property with a view that it shall be placed in a building of which he is the owner, and who executes a chattel mortgage on the property so purchased, thereby evinces his intention that it shall retain its character as personalty, regardless of the manner in which it may be annexed to the freehold. *Binkley v. Forkner,* 117 Ind. 176 (pt. p. 182), 19 N.E. 753 [3 L.R.A. 33]; *Wolf Co. v. Hermann Savings Bank,* 168 Mo. App. 549 (pt. p. 553), 153 S.W. 1094. See, also, *Commercial Finance Co. v. Brooksville Hotel Co.,* 98 Fla. 410, 123 So. 814 [64 A.L.R. 1219]."

In the instant case the pleading indicates, and the parties argue, the situation of a chattel mortgage given by the owner of the improvements after the items included in the chattel mortgage have become a portion of the improvements on the land. That items of personal property may become subject to a mechanic's lien by becoming fixtures, we have decided in *Dawson v. Scruggs-Vandervoort Barney Realty Co.,* 84 Colo. 152, 268 Pac. 584, where we held that a refrigerator plant, connected to a building by brine pipes and brackets, was a part of the freehold and that one furnishing new brine pipes was entitled to a mechanic's lien.

Nor does this case come under the purview of our more recent opinion in *Andrews v. Williams,* 115 Colo. 478, 173 P. (2d) 882, 169 A.L.R. 471, where we held that

when improvements on leased premises are installed by the tenant, a liberal construction in favor of the tenant will be given the question of annexation to the freehold, and the tenant will be permitted to remove the improvements during his term, provided this can be done without material injury to the freehold.

█ Rather do we think that this case comes under the proposition laid down in *Horn v. Clark Hardware Co.*, 54 Colo. 522, 131 Pac. 405, 45 L.R.A. (N. S.) 100. There, we held that the private agreement between lessor and lessee of their respective rights in the machinery by operation of law did not change the character of this property so far as the rights of third persons were concerned who claimed a lien on the property as realty. In that case the tenant purchased from the lien claimant a boiler, engine and other appliances, and installed them in a building upon the leasehold, intending that the whole constitute and be operated as an ore reduction mill. The machinery and appliances were necessary for this purpose. We held that they thereby became part of the leasehold and were not, as against the lien claimant, liable to be sold as personalty on execution against the tenant.

In the case of *Moul v. Thompson*, 91 Colo. 323, 14 P. (2d) 1004, we said concerning property of a similar character: "The property in question might be, for the purposes of this suit, either real or personal, depending upon the reason for its installation and use, its adaptability to other than the laundry business, and the class to which it was mutually assigned by those who dealt with it. * * * "

█ The question of whether the property involved is personal or real is an issue to be determined by the trial court.

█ Our conclusion, therefore, is that plaintiffs' complaint as against the chattel mortgagees stated a case, and that the motion to dismiss should not have been granted.

534

The judgment is accordingly reversed on this first point.

■ (II) Counsel for Stapp Engineering Company argue that that company is entitled to a lien on the real estate owned by Colorado Ice and Cold Storage Company because of the failure of the latter company to post the notice of nonliability provided for under section 19, chapter 101, '35 C.S.A.

In our opinion in *Stewart v. Talbott,* 58 Colo. 563, 146 Pac. 771, we gave a negative answer to that contention. We referred in that case to the words used in *Grimm v. Yates,* 58 Colo. 268, 145 Pac. 696, that the purpose of section 19, supra, "is to require an owner, where another in possession of his property is making improvements, which by the terms of the agreement between the owner and the party in possession, the latter is without authority to make, to give notice * * * within five days after he shall have obtained knowledge that they are being constructed, that his interest * * * shall not be subject to any lien therefor, * * *."

The inapplicability of section 19, supra, to the facts in this case is disclosed by the concluding proviso in that section which reads: "provided, further, that the provisions of this section shall not be construed to apply to any owner or person claiming any interest in such property who shall have contracted for any erection, structure or improvement mentioned in this subdivision."

Just as we said in *Grimm v. Yates, supra,* "None of the work performed by plaintiff and his assignors was unauthorized by the instrument executed by the defendant under which the Mines Company was working the mines;" so in the present case it can be said that none of the work performed by plaintiffs was unauthorized by the contract between Stapp Engineering Company and Carb-Ice, and the agreement of lease between Carb-Ice and the Colorado Ice and Cold Storage Company.

The same application of this section of the statute

was made by another court in *Miller v. Davis,* 26 Colo. App. 483, 487, 145 Pac. 714, where the court, in speaking of section 19, supra, said: "The last named section has no application to improvements made pursuant to contract, direct or indirect, with the owner of the land. *Fisher v. McPhee & McGinnity Co.,* 24 Colo. App. 420, 135 Pac. 132; *Grimm v. Yates,* ...... Colo. ......, 145 Pac. 696, decided December 7, 1914; *Stewart et al v. Talbott, et al.,* ...... Colo. ......, 146 Pac. 771, decided January 4, 1915."

The rule laid down in the foregoing cases seems not to have been subsequently overruled, and we see no reason for doing so now.

In their reply brief counsel for plaintiff for the first time urge the point that the lease set forth in the complaint between Colorado Ice and Cold Storage Company and Carb-Ice was unrecorded, whereas the lease in *Stewart v. Talbott, supra,* was recorded. They state that had the lease in the instant case been recorded, their client might then have been charged with constructive notice of the lease. This would seem to be beside the point, because nowhere in the complaint, as set forth in the record, do we find an averment that plaintiffs did not have *actual* knowledge of the fact that the Storage Company was leasing to Carb-Ice the land upon which the Carb-Ice plant was being erected, and both sides in their arguments assume that Carb-Ice, at the termination of the lease, would have the right to remove the improvements.

This is a case therefore where plaintiff has no lien upon the real estate of the lessor storage company, either by right of estoppel under section 19, supra, or by right of contract under sections 15 and 17, chapter 101, '35 C.S.A.

The judgment on this second point is accordingly affirmed.

MR. JUSTICE HOLLAND not participating.