No. 18,010.

WILFRED LIERZ, ET AL. *v.* BISMARK RUDOLPH COOK, ETC.
(315 P. [2d] 535)

Decided September 16, 1957.

Mr. WILLIAM M. CALVERT, for plaintiffs in error.

Mr. ROBERT W. JOHNSON, for defendant in error.

*En Banc.*

Mr. Justice Knauss delivered the opinion of the Court.

The parties are here in reverse order of their appearance in the district court. We will refer to them by name, or as plaintiff and defendants.

Defendants by writ of error seek to reverse a judgment against them in the sum of $2,742.38 and decreeing a mechanic's lien in favor of plaintiff upon property owned by defendants and ordering a sale thereof to satisfy the lien.

Defendants' property consists of a concrete block one story business structure, divided into three separate units or stores. On June 10, 1954, the center unit was leased to Lawrence and Ramsey for a five-year term, the premises to be used as a commercial launderette. Under the terms of the lease the tenants had the right to install such equipment as might be necessary to operate a commercial launderette. During the term of the lease the tenants, who are not parties to this action, employed plaintiff to do electrical work required for the installation and operation of washing machines, dryers, flat work ironers, etc., upon the leased premises, in connection with their commercial operation. The tenants failed to pay for the work and materials furnished, and plaintiff filed a lien statement claiming a lien upon the property of defendants.

By his complaint plaintiff sought judgment for the amount claimed and foreclosure of the lien. Several defenses were set forth in defendants' answer. We need mention only two of them. (1) That plaintiff's lien statement was not filed within the time provided by statute; and (2) that the work was done solely at the request of the tenants as authorized in their lease and plaintiff has no lien rights against defendants.

It is undisputed that the only agreement for the installation of the electrical wiring was oral and between plaintiff and Mr. Lawrence, one of the tenants. No writ-

ten contract was executed and from the record it cannot be ascertained just what work was originally agreed upon.

We quote from the testimony of plaintiff's witness, A. D. Cook:

"Q. Now, this contract which you stated in your direct examination that Lawrence engineered the job, can you tell the court a little more about that contract? Was it a unit contract? A. Actually there was no prearranged contract or written contract for a stipulated or certain amount of work. It was a special contract based on time-and-materials basis to perform all the necessary labor, furnish all the necessary material and labor necessary to put the launderette in operation."

The work was commenced October 7, 1954, and continued until December 28, 1954. Nothing more was done until February 21, 1955, at which time plaintiff did additional work, the last being done on February 25, 1955. The lien statement was filed for record on May 6, 1955.

It is undisputed that plaintiff knew that Lawrence and Ramsey were tenants under a lease from defendants.

The trial court found that "Most of these outlets [installed by plaintiff] are power outlets and designed to run machinery."

The plant was opened for business on the first Monday in December 1954.

This is not the ordinary case of a mechanic's lien claimant seeking foreclosure of his lien against the landowner, but involves a lessor-lessee relationship where the lien claimant furnished materials and performed work authorized by the terms of the lease solely at the request of the lessee and who now seeks foreclosure against the property of the lessor.

The written lease between defendants and Lawrence and Ramsey, after identifying the property leased, provided: " * * * which said premises it is expected and agreed may be modified to the amount necessary for the installment therein of automatic Westinghouse laundry

machines and dryers and laundry equipment, together with the necessary partitions, shelving, counters, etc., for the conduct of complete laundromat service from the first day of July 1954 and during and until the first day of July 1959" with option and renewal for another five years.

Counsel for plaintiff contend that, "It should be noted that the last work done on the premises by the plaintiff was February 25, 1955, and included the installation of the air conditioning system, the hook-up to the controls and boiler system and the hook-up to the neon sign, all of which were a part of the original contract." They argue that it is "common knowledge that periods of time in excess of thirty days lapse during normal construction in which various tradesmen do not work. * * * "

In view of the indefiniteness of the original contract, and of the admitted fact that the Laundromat was put in operation the first Monday in December 1954, we are unable to say that knowledge of "periods of time in excess of thirty days lapse during normal construction in which various tradesmen do not work," whether common or otherwise, vitiates the plain terms of the statute which provides: "For the purpose of this article cessation from labor for thirty days upon any unfinished contract or upon any unfinished building, improvement, or structure, or the alteration, addition to, or repair thereof, shall be deemed equivalent to a completion thereof." C.R.S. '53, 86-3-9.

The record discloses a break of some sixty-five days between December 28, 1954, when the work stopped in 1954 and the 21st day of February, 1955, when additional work was done.

▆ Where, as here, the work done by a lien claimant for a tenant is strictly on a cost-plus basis, the cessation of work for thirty days starts the statute running as to the period within which lien statements must be filed. The fact that the Laundromat was opened for business on the first Monday in December 1954, while not an ab-

solute criterion, must be given weight with reference to the acceptance of the work. The further fact that on December 28, 1954, the work ceased and nothing further was done until late in February 1955, persuades us that the time within which a lien had to be filed for record under C.R.S. '53, 86-3-9, began to run thirty days after December 28, 1954.

Counsel contends that plaintiff has a valid lien because the defendants did not post a notice within five days after the work began on the premises leased to Lawrence and Ramsey to the effect that defendants' "interests shall not be subject to any lien for" the cost of any alteration or improvement of the premises.

The question is thus presented whether under the circumstances the owner of leased property must give this notice pursuant to C.R.S. '53, 86-3-5. This statute has been construed in several cases, to-wit: *Grimm v. Yates,* 58 Colo. 268, 145 Pac. 696; *Stewart v. Talbott,* 58 Colo. 563, 146 Pac. 771; *Empire Coal Co. v. Rosa,* 26 Colo. App. 230, 142 Pac. 192; *Milwaukee Gold Mining Co. v. Tompkins-Cristy Hardware Co.,* 26 Colo. App. 155, 141 Pac. 527; *Fisher v. McPhee and McGinnity,* 24 Colo. App. 420, 135 Pac. 132; *Terminal Drilling Co. v. Jones,* 84 Colo. 279, 269 Pac. 894; and *Stapp v. Carb-Ice Corp.,* 122 Colo. 526, 224 P. (2d) 935.

In the Stapp case, decided in 1950, the claimant was denied a lien for work done under contract with the lessee on property of the lessor in constructing a building on lessor's land, where the lessee was required by the lease to erect the building and lessor failed to post notice of non-liability as required by C.R.S. '53, 86-3-5. We quote from the Stapp case, supra: "This is a case therefore where plaintiff has no lien upon the real estate of the lessor storage company, either by right of estoppel * * * or by right of contract. * * * "

█ We must conclude that under the settled law of this state where a lessee in possession is authorized by the terms of his lease to make alterations or improve-

ments to the leasehold and the same is done by the lien claimant. solely at the request of the lessee, no lien will be sustained upon the property of the lessor, and no notice of non-liability need be posted by the property owner.

In the case at hand Lawrence and Ramsey were lessees in possession at the time they contracted with plaintiff, who knew that they were tenants. The installations for which a lien is claimed were not for the primary benefit of the lessor, who did not agree directly or indirectly to reimburse lessees for the expense thereof. The alterations and installations were entirely optional with lessees for their sole use, benefit and convenience. See, also, *Deka Dev. Co. v. Fox*, 170 Okla. 228, 39 P. (2d) 143; *Colby & Dickinson, Inc. v. Baker, et al.*, 145 Wash. 584, 261 Pac. 101.

In *Mulcahy Lumber Co. v. Ohland, et al.*, 44 Ariz. 301, 36 P. (2d) 579, a lumber company was held not entitled to a lien on realty for materials used by lessee in remodeling a leased building for an indoor golf course, under a clause in the lease authorizing necessary alterations to adapt building for such purpose, in view of provisions in lease that alterations should be made at lessee's expense.

We believe that the facts in this case bring it squarely within the rule laid down in *Grimm v. Yates; Stewart v. Talbott* and *Stapp v. Carb-Ice Corp.*, supra. We see no reason to depart from the rule announced in those cases, accordingly the judgment is reversed and the cause remanded with direction to dismiss the plaintiff's complaint.