Filed Nov. 22, 1893.

No. 16,234.

## McELWAINE ET AL. *v.* HOSEY ET AL.

135 481
145 633

135 481
160 204
e160 206
160 207

135 481
e161 606

135 481
f166 5

135 481
170 315

MECHANICS' LIEN.—*Scope of Act of 1889.*—*Statute Construed.*—The act of March 9, 1889, concerning mechanics, laborers, etc., liens, is general in its provisions, and the spirit and intention of this statute is to prefer laborers as a class, and not to prefer one class of laborers to another.

SAME.—*Lien Without Notice.*—*Scope of Provision.*—*Special and Remedial Statute Construed.*—Section 1 of the acts of 1889, p. 257, creating a lien without notice, is remedial and specific in its terms, and is limited in its operation to the specified class of service mentioned therein; and does not extend to erections or structures other than those thus designated. The implements, boiler, engine, shafting, beam, derrick, reel, ropes and drill, when put in place and action for boring a well, do not come within the provisions of section 1, *supra*, and require notice of intention to hold a lien.

RECEIVER.—*Power to Appoint.*—The court has inherent power to appoint a receiver in any case where it is found necessary to protect the rights of all parties, and to properly execute the decree of the court.

PLEADING.—*Agreement of Parties.*—*When Dispenses With Special and Supplemental Pleadings.*—*Relief.*—*Estoppel.*—Where the parties to an action agree before entering upon the trial, "that all facts in any way relating to the case in hand, or affecting the merits of the con-

troversy on either side, may be introduced in evidence under the pleadings now on file," such agreement precludes all insistence that the relief granted is broader than the pleadings authorize.

From the Hamilton Circuit Court.

*G. Shirts* and *I. A. Kilbourne,* for appellants.

*G. W. Stephenson, W. R. Fertig, T. J. Kane* and *T. P. Davis,* for appellees.

DAILEY, J.—On the 31st of March, 1891, the appellees, Hosey, Larby, Stroup and Wilson, filed their complaint in the Hamilton Circuit Court, the first three to recover for wages alleged to be due them as drillers of a certain gas well for the contractor, the appellee Holleran, and the last named to recover for alleged services as a teamster, in hauling pipe and other material to said well while in the process of construction, and to enforce an alleged laborer's lien on behalf of all of said plaintiffs, and praying also for the appointment of a receiver.

The appellee Holleran separately answered that on the 9th day of March, 1891, he had executed to certain of his creditors, a written instrument, mentioned in the complaint, whereby he transferred the property in question to them, reserving to himself therein $600 for his exemption generally, praying that the court would secure to him said sum, and joining in the prayer for a receiver. Afterwards, on his motion, the appellee Isom Cloud was made a party, and filed his separate answer and cross-complaint, wherein he alleged that he was also a creditor of said Holleran, on account of wages, as a teamster, in hauling certain material to and from the well, praying judgment therefor and that the same be declared a prior claim. At the same time the appellees Heiny and Crull filed their cross-complaint claiming, by assignment, certain wages alleged to be due Walter S. Brown and Wash. Bowman, drillers; also certain

claims alleged to be due them for livery hire, asking judgment therefor and that the same be declared preferred.

The appellants McElwaines filed their cross-complaint against the other parties, wherein they alleged a large amount of indebtedness due and owing them from said Holleran upon notes and open account, by reason of claims secured by mortgage to other parties paid by and assigned to them, and for cash paid in the completion of said well, praying for judgment against said Holleran for the amount due on said debts; also, for a foreclosure of said mortgage and the adjustment of the rights of the several parties thereunder. Appellants McElwaines answered the cross-complaint of Holleran by general denial, and the appellants, James B. McElwaine and Brooks, demurred to plaintiffs' complaint for want of facts, which was overruled.

Appellants, James B. McElwaine, Brooks, Vance, and Springer, then answered the complaint in two paragraphs, the same being general denial and payment.

The cause was submitted to the court for trial, and on the 18th day of May, 1891, a finding and decree were entered in favor of the several plaintiffs and cross-complainants, Heiny, Crull and Cloud, for the amounts of their respective claims, adjudging them to be preferred, and appointing a receiver; the court also found and adjudged the amount due to appellants McElwaines refused to decree a foreclosure as prayed for by them, but directed the receiver to take charge of the property involved in the contest and sell the same, and with the proceeds pay the claims of the plaintiffs and certain defendants as preferred in the order set out in the decree.

On May 23, 1891, the appellants, McElwaine and Brooks, separately moved the court to modify the judgment, which motion was overruled, and said appellants

filed their motion for a new trial, with certain specifications therein, which motion was overruled. The errors assigned are:

First. Overruling the several demurrers to the complaint of the plaintiffs, and to the cross-complaint of the alleged laborers.

Second. Overruling the motion to modify the decree.

Third. Overruling the motion for a new trial.

Fourth. Error in the appointment of a receiver.

The facts introduced on the trial show that on the 13th day of December, 1890, the appellee Michael Holleran entered into a contract with the appellant Brooks, whereby Holleran was to drill, at his own expense, a gas well, ready for use, for which he was to receive, when completed, $1,100, and by subsequent arrangement, Brooks was to furnish to drillers material and labor for the work, all of which he was to deduct from the contract price; that on the 27th of April, 1891, the appellants McElwaines, doing business under the style name and firm of "J. B. McElwaine & Co.," settled with Brooks, allowing him on his claim for board, etc., $254.65, and received in cash the balance of the contract price, $895.35; that in the settlement with Brooks, McElwaine & Co. assumed the defense of this action, and agreed to pay whatever the court should adjudge to be liens upon said property; that appellee Hosey was a driller, and as such worked eighteen days, at $3 per day, prior to the execution of the assignment hereinafter mentioned, during which time his board bill was $9.80; that appellee Larby was also a driller, and as such worked twenty days prior to the execution thereof at $4 per day, during which time his board bill was $10; that appellee Stroup worked eighteen days prior thereto, at $4 per day, and his board bill during that time was $10.40; that before the execution thereof said Cloud, a teamster, hauled pipe

and material from the city of Noblesville to the well, the value of which service was $12; and about the same time Jordan Wilson performed like service of the value of $23; that on the 9th of March, 1891, the appellee Holleran executed the following written instrument to the persons therein named, to wit: "This indenture witnesseth that Michael Holleran, of the city of Noblesville, Hamilton county, State of Indiana, hereby sells, transfers, assigns, and delivers, subject to the conditions and on the terms hereinafter stated, to Julius Joseph, Ed. Sopher, John C. Craig, William C. Vance, The Foundry and Machine Works, J. B. McElwaine, George A. Richards, George E. Springer and James Clark, of the counties of Hamilton and Marion, in the State of Indiana, to wit: Two complete strings of drilling tools, three rigs and derricks, one string of four and a quarter drilling tools, including pipe, casing, tubing, etc., and all appliances connected therewith, and claim against Madison Brooks for drilling gas well, amounting to $1,100, and also claim against Castleton Gas Company for $200; reserving, however, to myself, on my statutory exemption as a householder, $600 of said claims and property aforesaid; the condition of the above and foregoing is, that I am indebted to Julius Joseph in the sum of $89, Ed. Sopher in the sum of $150, John C. Craig in the sum of $28, William C. Vance in the sum of $65, and the Foundry and Machine Works in the sum of $160, which claims are preferred, and to be first paid out of the foregoing claims and property, after deducting my exemption; and, also, I am indebted to J. B. McElwaine & Co. in the sum of $5,000, George A. Richardson in the sum of $120, George E. Springer in the sum of $160, and James Clark in the sum of $103, and after reserving and deducting exemption as aforesaid, and the payment of said preferred claims, as hereinbefore stated, the residue

of said claim and property shall be used and applied *pro rata* to the payment of debts herein last referred to, on the basis of the amounts hereinbefore stated. It is further agreed and understood that said creditors hereinbefore named may have and take immediate possession of said property, and sell and dispose of the same in such manner as to obtain the highest and best price, and after allowance and payment of said exemption, and the payment of said preferred claims in full, the residue of the proceeds shall be applied, as hereinbefore stated, to the liquidation of said claims of the second class, hereinbefore mentioned, *pro rata;* the said Holleran shall continue the work on the Madison Brooks well, and complete the same, and continue to use the property hereinbefore described, or so much thereof as may be necessary for the purpose, and the expenses of completing said work, and the labor account incurred in completing said work shall be paid out of said $1,100 owing by said Madison Brooks.''

Two days after the execution of said contract, said Vance, acting for the creditors so preferred, took possession of the well, and continued the drilling for the purpose, employing appellees, Hosey, Larby and Stroup, who performed such service, and incurred board bills with said Brooks as follows: Hosey, ten and one-half days, $31.50; board bill, $5.40. Stroup, seven days, $28; board bill, $4. And Vance incurred other expenses amounting to $41.48.

On March 24, 1891, appellants McElwaine & Co. purchased what are styled the prior claims in said contract of assignment, to wit: Joseph, $80; W. C. Vance, $59; Sopher, $135; Craig, $28; Foundry, $160, and Richardson, $120; total, $582—paid Vance's expense account, $41.48, and assumed to pay whatever said Vance was personally responsible for.

On the 25th of March, 1891, they likewise paid to said Brown, for labor on well, under Vance, $28.55; to Larby, labor on well, under Vance, $39.01; paid Gilchrist, for completing the same, $300, and for fishing tools and freight, $68. Holleran, therefore, was indebted to McElwaine & Co., as found by the court, for the amount due upon the notes and open account, set up in their cross-complaint, and for the expenses last above stated, and for the amount paid to parties named in written contract, as preferred, who had assigned their claims to McElwaine & Co., in all in the sum of $7,035.35, which was so found by the court, in this case.

On March 26, 1891, appellees Hosey, Stroup and Larby served upon appellant Brooks notice, in writing, wherein they claimed the several amounts due them for wages as drillers, both before and after the making of said written contract, and asserted a lien on the gas well and all castings, piping, tubing and other fittings used or placed therein or connected therewith, and upon all tools, machinery, structures and appliances used in or about the drilling of said well, and upon the lot or parcel of land whereon the same was situated, and directing said Brooks to retain, out of the contract price of the well, the sums of money so due, in default of which they would hold him personally responsible therefor. As to the claims of appellees Heiny and Crull, it appears they were liverymen, and that two drillers, while they were engaged at the work, hired rigs from said appellees; that Holleran was to pay for this service out of the wages of said drillers, and that said wages were afterwards assigned by said drillers to Heiny and Crull. The court decreed that said drillers, and each of them, were entitled to a lien upon said property for their wages, and that said teamsters and liverymen were also entitled to a lien, and that said Holleran was entitled to a lien, gen-

erally, for $560, being a part of his exemption. The court also rendered a personal judgment in favor of J. B. McElwaine & Co. for the amount due them, but refused to decree a foreclosure as to said amount.

As to the first assignment of error, it is now urged that the court erred in overruling a demurrer to the complaint as to appellants J. B. McElwaine & Co. and Brooks, and the point is made that it did not seek a personal judgment, but was brought on the theory that plaintiffs were entitled to a lien and the appointment of a receiver to pay the debts, plaintiffs being too poor to wage an ordinary warfare. We will occupy no time and consume no space in reviewing the sufficiency of the complaint. All such objections are waived, by the agreement of parties, before entering upon the trial, to wit: "It is stipulated by the parties to this suit that all facts in any way relating to the case in hand, or affecting the merits of the controversy on either side, may be introduced in evidence under the pleadings now on file."

In view of this agreement, it is now too late for appellants to insist that the relief granted is broader than the pleadings authorize. This stipulation dispensed with all amendments and special or supplemental pleadings, and, properly construed, meant that the court might grant relief in accordance with the facts proven thereunder. Litigants will not be presumed to have entered into an idle compact, agreeing that all facts might be proven without further pleadings, if they were to be deprived of all benefits, on those facts, when shown. It was not merely formal matters to which the agreement related and the relief was to extend, but those affecting the merits of the controversy as well. In short, the mutual stipulation cures all defects, if any exist, in the proceedings, which might be cured by amendment, and constitutes a waiver of the right to assign error, in this court,

that the complaint and cross-complaint do not state facts sufficient to constitute a cause of action.

From the recital of facts we have given, the appellees, except Holleran and Heiny and Crull, held claims for manual labor performed by them in drilling a gas well on the lands of appellant Brooks.

The questions arising in this appeal, so far as they are concerned, are:

First. Whether they have laborer's liens on the property in controversy, or on the lands of Brooks.

Second. Whether they are preferred by the instrument of assignment executed by Holleran.

Heiny and Crull, as stated, held claims by assignment for services of team in hauling materials for the well, and if their assignors had preferred claims, such transfer would carry with it the preference. So the claims of all appellees, except Holleran, would then stand on an equal footing, with this difference only, that Larby, Stroup and Hosey served notice on Brooks to bind him personally, and the court gave them personal judgment against him, while Wilson, Cloud, Heiny, and Crull's assignors failed to avail themselves of such privilege, and therefore obtained no personal judgment, but were given a preferred lien *in rem*.

Appellants' contention that teamsters are not within the provisions of the act of March 9th, 1889, concerning liens of mechanics, laborers, and material-men we think fallacious. The spirit and intention of this statute is to prefer laborers as a class, and not to prefer one class of laborers over another, nor one kind of manual or mechanical toil over another, if all come within the general scope of its provisions and comply with its terms. The law was enacted in the interest of such wage-earners generally, and should be liberally construed so as to effectuate the object intended.

It would be a forced and improper construction to allow third parties to interfere and defeat its object by taking the products of labor from the hands of an insolvent employer without paying for the services thus rendered. It is claimed that the court erred in the appointment of a receiver, because appellants McElwaines had executed a bond to pay appellees, if their claims were established, but an examination of the record shows that Holleran, whose claim amounting to $540, was not provided for in the bond, asked for a receiver, and that he was not a party to the agreement not to press application for one. The power is inherent in the court to appoint a receiver in any case where it is found necessary to protect the rights of all parties and to properly execute the decree of the court.

In this case there were so many conflicting interests that the appointment of a receiver was the simplest solution of the difficulty.

In enumerating the various cases in which a receiver may be appointed, the seventh clause of section 1222, R. S. 1881, among other things, provides for such appointment, "where in the discretion of the court, or the judge thereof in vacation, it may be necessary to secure ample justice to the parties."

It presents a case in which the liabilities of Holleran exceeded the amount of his assets. He was in an insolvent condition, and existing equities had to be marshaled between his creditors.

Appellees are right in their contention that, where the debtor is possessed of property, their claims would be preferred by the acts of 1885, section 3, page 37, which is as follows: "All debts due any person for manual or mechanical labor shall be a preferred claim in all cases against any individual, co-partnership, corporation or joint stock company, where the property thereof shall

pass into the hands of an assignee or receiver, and such assignee or receiver, in the distribution and payment of the debts, shall be required to first pay in full all debts due for manual or mechanical labor before paying any other, except the legitimate costs and expenses.''

As soon as the property so passes into the jurisdiction of the court the lien is created. The lien is not in suspension until the funds are in court for distribution. It makes no difference whether the laborers or some one else take the initiative by which they are preferred, the result is the same as to wage claimants.

This section, however, can have no application as to those who gave no notice, where, prior to the appointment of a receiver, the property has been assigned by the debtors to part of the creditors in payment or discharge of preëxisting or antecedent debts. In such case the transfer of the property left nothing on which the order of the court could operate as to them. The court could not annul the transfer or divest the property rights of the assignees already acquired, where there was no fraud shown in the transaction. *Mark* v. *Murphy*, 76 Ind. 534, cited by appellees is not analogous.

In that case parties had filed their notices of lien and invoked the aid of a different rule. There is a contention as to whether the labor, for which a recovery is sought in this proceeding, accrued under any of the methods of employment for which the Acts of 1889, section 1, page 257, create a lien without notice. This is a remedial statute. It is very specific in its terms, and was evidently to secure to the class of wage-earners, known as mechanics and laborers, the fruits of their toil, while employed in or about any shop, mill, wareroom, storeroom, or manufactory, by granting them first liens upon all the machinery, tools, stock of material, or work finished or unfinished, located in or about such shop,

mill, wareroom, storeroom or manufactory, or used in the business thereof; and should the person, firm, or corporation be in failing circumstances, the above-mentioned claims shall be preferred debts, whether notice of lien be filed or not, but this statute, it will be observed, providing a lien, without filing such notice, is limited in its operation to this specified class of service, and does not extend to erections or structures other than those thus designated.

If parties desire a lien for other services enumerated in section 1, but not embraced in this list, they must file their notice of mechanic's lien in the recorder's office, as provided by section 3 of the same act.

We can not adopt the appellees' theory that the boiler, engine, shafting, beam, derrick, reel, ropes and drill, when put in place and action, come within the definition of a mill within the meaning of the statute. They constitute a structure, not a mill. Anderson's Law Dict., 982, 410.

An examination of section 1, Acts 1889, *supra*, clearly shows that the rights of those who fail to file the required notice, are narrow and circumscribed, as compared with those who avail themselves of the provisions of section 3, Acts 1889, page 258.

If the last clause of section 1 had included structures it would raise a different question. But it is urged that appellees are preferred, by the very terms of the instrument of assignment when properly construed; it contains the following stipulation: "And the expenses of completing said work and the labor account incurred in completing said work shall be paid out of said $1,100 owing by said Madison Brooks."

We think the clause quoted refers to labor accounts to be created in finishing the well, after the date of the transaction creating the assignment. The word com-

plete, as used, signifies the finishing of unfinished work, bringing it from the condition in which it then was to a state in which there was no deficiency. The instrument is not broad enough to include the laborers' claims preceding its date in the list of preferred creditors. As to Holleran's demand, the writing he executed, giving possession of all the property to Vance, and directing Brooks to pay the money to him, expressly stipulated that he retained and reserved to himself the right to $600, as a resident householder. McElwaines admit they assumed and agreed to pay the claim, which would entitle Holleran to it, as a matter of contract, if there were no statutory exemption on which it could be predicated. McElwaines having agreed to pay the $600 in consideration of the execution of the contract and the delivery of possession, they can not retain its benefits and refuse to comply with its burdens. The assignor is entitled to the $600, not only as against the McElwaines, but also as against Brooks. They can not defeat this privilege by afterwards asserting a superior claim to the fund on account of payments by them of which Holleran had no knowledge. As the claim rested on the right of exemption, the claimant would not be required to elect or designate the particular fund out of which he would take it. *Kelley* v. *McFadden,* 80 Ind. 536.

The question of the right of a debtor to his exemption under the constitution and laws of this State, so that he may enjoy the necessary comforts of life, should be liberally and reasonably construed. *Butner* v. *Bowser,* 104 Ind. 255; *Astley* v. *Capron,* 89 Ind. 167.

Judgment affirmed as to Holleran, Hosey, Larby, and Stroup, and reversed as to Wilson, Cloud, Heiny, and Crull, who gave no notice.

Filed Nov. 7, 1893.