## No. 11,869.

### POUDRE RIVER OIL CORPORATION *v.* CAREY.

Decided March 19, 1928.   Rehearing denied April 9, 1928.

Action on money demand and to foreclose mechanic's lien.   Judgment for plaintiff.

### *Affirmed in Part.*

### *Reversed in Part.*

1.   APPEAL AND ERROR—*Findings—Presumption.*   On review, findings being for plaintiff, it will be assumed that all conflicts in the testimony were resolved in his favor, and the questions presented must be treated in the light of the evidence most favorable to him.

2.   PLEADING—*Defective—Evidence.*   Although a claim is defectively pleaded, if evidence pertaining to it is introduced by both sides without objection, it will be considered on review as properly at issue.

3.   APPEAL AND ERROR—*Questions not Raised Below.*   Where a question is treated as at issue below an objection based on the omission of a specific allegation from the complaint cannot be raised for the first time on review.

4.   CONTRACT—*Breach—Right to Terminate.*   In an action for money due under a contract to drill an oil well, failure of defendant to comply with its terms in the matter of furnishing cordage, casing, and fuel as required, held to constitute such a breach as to entitle plaintiff to terminate the contract, and he did not lose this right by carrying out his part of the contract until the full extent of defendant's inability or indisposition to comply with its terms had been disclosed.

5.   *Payment—Installments.*   Provision in a contract for payment of installments due during the progress of drilling an oil well is material, and a breach of such condition entitles the contractor to treat the contract as at an end.

6.   APPEAL AND ERROR—*Sufficiency of Evidence.*   In an action for money due under a contract to drill an oil well, evidence held legally sufficient to justify a judgment for plaintiff.

7.   Liens—*Oil Well—Machinery and Equipment.* One who drills an oil
     well under contract, furnishing labor only, is not entitled to a
     lien upon machinery and equipment which he did not furnish for
     the work.

*Error to the District Court of Larimer County, Hon.
Claude C. Coffin, Judge.*

Mr. Ernest Morris, Rose Manion Hemperly, for plaintiff in error.

Messrs. Stow & Stover, Mr. H. A. Alpert, for defendant in error.

Mr. Henry J. Hersey, Mr. W. B. King, amici curiae.

*En Banc.*

Mr. Justice Walker delivered the opinion of the court.

Defendant in error was plaintiff, plaintiff in error defendant below, and we shall so designate them in this opinion. Present counsel for defendant did not represent it in the court below.

The action was to recover $3,350 claimed for services in drilling an oil well, and to foreclose a lien for that amount which the plaintiff had filed upon certain personal property belonging to the defendant. The trial was to the court without a jury. Judgment was rendered for the plaintiff in the sum of $2,920, and foreclosure of the lien was ordered. Errors are assigned both to the money judgment and the decree for the foreclosure of the lien.

Defendant had a lease upon certain lands in Larimer county, upon which it desired to sink a well for oil. It was however without funds except such as were accruing from the sale of its capital stock. On April 14, 1926, plaintiff, who was an experienced driller, entered into a

written contract with defendant, by the terms of which plaintiff was to drill a well upon defendant's leased land, to a depth of 3,000 feet unless oil or gas should be sooner encountered. The plaintiff agreed to furnish all drilling equipment and machinery, except derrick, rig irons and cordage, which defendant was to provide. The defendant also agreed to furnish all fuel and casing on location. Plaintiff was to do the work "in good and workmanlike manner" and "to prosecute the same to final completion at the earliest possible time compatible with good workmanship and safety to drilling operations." Defendant agreed to pay $2.50 per foot for the drilling, payments for work done to be made upon completion of each 500 feet of well, but 25 per cent of the payment so earned was to be by the defendant deposited in escrow in the Poudre Valley National Bank, and turned over to plaintiff upon completion of the work.

Operations were begun under the contract, and the well had been sunk to a depth of 2,165 feet without oil or gas having been struck, when on August 25th plaintiff removed his machinery from the location. On August 28th he filed the lien in question, and on September 6th instituted this action.

The complaint as amended set forth the written contract, and oral contracts for extra work. The oral contracts were $120 for repairing and $500 for daylight drilling and $430 for swedging casing. Upon the written contract $5,350 was claimed to have been earned, being 2,140 feet at the contract rate. However, the total demand was $7,100, less $3,750 admitted to have been paid. Of this demand $700 represented a claim for straight reaming under oral agreement not specifically mentioned in the complaint but shown in the evidence. The complaint alleged that the plaintiff performed all the conditions of the written contract on his part except that he was unable to proceed further with the contract because of the defaults of the defendant in the following particulars: (1) Failure to furnish fuel; (2) failure to

furnish casing; (3) failure to furnish cordage; and (4) failure to deposit the escrow money as agreed. Defendant by its answer denied the making of the oral contracts, averred that the escrow provision had been waived by agreement, denied the other defaults charged against it, averred that plaintiff had without justification abandoned the contract, and in addition, by way of counter-claim, averred that plaintiff had drilled a ''crooked hole'' and ruined casing belonging to defendant. Issue was also joined upon the existence of the lien claimed by plaintiff. The court found for the plaintiff except upon the $430 claimed for swedging.

The findings having been for plaintiff, we must assume that all conflicts in the testimony were resolved in his favor. The questions presented must therefore be treated in the light of the evidence most favorable to the plaintiff.

1. The errors assigned to the recovery upon the oral items do not present any difficulty. There was evidence to support each of these items, but it is not necessary to detail it here. The principal objection to the allowance of the $700 claim for straight reaming is that the plaintiff did not set it forth in his complaint. However, it was embraced in the general allegation of the original complaint, and within the amount of the demand in the complaint as amended, and so was at least defectively pleaded. Evidence pertaining to it was introduced by the plaintiff without objection by defendant, which in its turn offered testimony to support its version of the item. It was thus treated as an issue, and the omission of the specific allegation from the complaint cannot be raised for the first time in this court under such circumstances. 31 Cyc. 723; *Lampman v. Lamping,* 70 Colo. 167, 199 Pac. 418.

2. The recovery upon the written contract is vigorously assailed upon several grounds. It is contended that there is no sufficient evidence to support the finding

that the defendant had breached the contract; that the defendant's defaults, if any, had been waived by the act of the plaintiff in proceeding thereafter with the execution of the contract; that the evidence was such as to compel a finding that the plaintiff's abandonment of the work before the well reached the required depth was unjustified; and that the evidence conclusively established the breaches charged to the plaintiff by the counterclaim.

It is manifest that the complaint is drawn on the theory that the defendant had committed such a breach or breaches of the contract as excused the plaintiff from further performance, and entitled him to recover the contract price for the work which had been completed when he terminated the agreement. No question is raised as to the propriety of the measure of damages selected by the plaintiff.

According to the plaintiff's testimony, the drilling line and cordage furnished by the defendant were defective, and on that account the drilling was stopped more than once; that May 29th to June 25th, July 10th to 20th, drilling was stopped because of the failure of defendant to furnish casing; that July 29th to 30th, August 8th to 13th, August 17th to the time when plaintiff quit work, drilling was stopped on account of the failure of the defendant to furnish fuel; that plaintiff on August 1st and 2nd had to purchase fuel, as the defendant had failed to supply it; that each shutdown was at plaintiff's expense. Plaintiff also testified that an agent of the defendant company was continuously upon the location with full opportunity to know of conditions there, and that the plaintiff on August 18th told the president of the defendant company that operations were suspended on account of lack of fuel. Plaintiff further testified that the escrow money was never deposited, that there was never any agreement to waive it, but that on the contrary the plaintiff repeatedly demanded that this provision of the contract be complied with.

The parties contemplated that the work would be prosecuted as speedily as "compatible with good workmanship and safety." Every cessation of operations diminished the plaintiff's profits. We think that a series of repeated failures by the defendant company to furnish cordage, casing and fuel, thus materially delaying the prosecution of the work, would constitute such a serious breach of the contract as to entitle the plaintiff to terminate it. Neither would he lose this right because, before the full extent of the defendant's inability or indisposition to comply with its engagements had been disclosed, the plaintiff had gone on with the performance of his own obligations. *El Paso & S. W. R. Co. v. Eichel & Weikel* (Texas), 130 S. W. 922. Moreover, the provision of the contract for the deposit in escrow, upon the completion of each 500 feet, of 25 per cent of the amount due the driller, to be turned over to him upon the completion of the contract, was a material term, the breach of which entitled plaintiff to treat the contract as at an end. The precarious method by which alone the defendant company was obtaining its funds, made this provision of more than ordinary importance to the plaintiff. Provisions for the payment of installments due upon building and other similar contracts have been repeatedly held to be material conditions. 9 C. J. 833, and cases there cited. The same reasoning applies to a stipulation of the kind now under consideration.

We must hold therefore that the evidence on behalf of the plaintiff, although contradicted on many points by defendant's witnesses, was legally sufficient to establish such defaults on the defendant's part in relation to the contract as to justify the abandonment of the work by the plaintiff.

Upon the issue of the plaintiff's performance of the work in a workmanlike manner, the plaintiff testified the well was not a crooked hole, and that defendant's president expressed himself, after an inspection, as satisfied with it. It also appeared in evidence that the de-

fendant had prosecuted the sinking of the well to a depth of 3,000 feet, after the plaintiff quit. Plaintiff also testified that the size of casing which he used was known to and approved by defendant. We cannot say that this evidence was insufficient to justify a finding for the plaintiff on this issue.

No error appears affecting the money judgment.

3. The lien asserted by the plaintiff purported to embrace a rig, rig irons, steel crown blocks, string of 10″ casing in the hole, other casing upon location, drilling line and sand line. This equipment belonged to the defendant, and was not furnished by the plaintiff to the defendant for the job. The statute under which the lien is asserted is found at sections 6466, 6467, Compiled Laws of Colorado, 1921, being chapter 141, Session Laws of 1903. So far as pertinent to this question the statute reads as follows: ''That any person or persons, company or corporation, who perform labor or furnish material or supplies for constructing, altering or repairing, or for the digging, drilling or boring, operating, completing or repairing of any gas well, oil well or any other well, by virtue of a contract with the owner or his authorized agent, shall have a lien to secure the payment of the same upon such gas well, oil well or such other well, and upon the materials and machinery and equipment and supplies so furnished, and in case the contract is with the owner of the lot or land, then such lien shall also be upon the interest of the owner of the lot or land upon which the same may stand, and in case the contract is with the lease holder of the lot or land then such lien shall also be upon the interest of the lease holder on the lot or land upon which the same may stand or in relation to which such material or supplies are furnished.''

Plaintiff in error contends that as the plaintiff below only performed the labor, and furnished no material, he is not entitled to a lien upon machinery and equipment treated, as it is here by the lien statement of plaintiff,

as personal property and as segregated from the oil well itself. This contention we think is well founded. In giving a lien upon the machinery and equipment "so furnished" we think the evident intention was to protect the party who had supplied such machinery and equipment for the job. One furnishing only labor has not created value in the machinery and equipment as detached personal property, but only in the well itself and the leasehold interest, and upon these the statute gives him a lien. This construction of our statute is supported by the decisions construing similar language in the Texas statute. *Security Banking & Investment Co. v. Flanagan*, (Texas) 254 S. W. 761, and cases therein cited. Decisions cited by plaintiff, from Oklahoma and Kansas are inapplicable because the language of their statutes is broader than that of our statute, and confers a lien upon equipment by whomsoever furnished. To what extent the laborer's lien might attach to machinery and equipment treated as a part of the oil well itself and not as severable personal property, we do not now decide. The foreclosure provisions of the judgment of the district court are not warranted by the statute relied upon to sustain them, and this makes it unnecessary to consider the questions affecting the validity of that act, upon which we have been furnished able briefs by amici curiae.

The money judgment against the defendant is affirmed, and that part of the decree for the foreclosure of the lien claimed by the plaintiff is reversed.