## No. 12,111.

TERMINAL DRILLING COMPANY, ET AL. *v.* JONES, ET AL.

Decided July 2, 1928.

Mr. C. A. BAILEY, Mr. CHARLES F. MORRIS, Mr. W. B. KING, for plaintiffs in error.

Messrs. TOLLES & COBBEY, for defendants in error.

*En Banc.*

MR. JUSTICE WALKER delivered the opinion of the court.

ON application for supersedeas.' Defendants in error as plaintiffs below obtained a decree foreclosing liens claimed by them for labor in connection with the drilling of a well sunk for the purpose of exploring for oil. Under the decree, foreclosure was ordered not only upon the well itself, but upon the fee estate, the leasehold estate, and the drilling rig, equipment and tools. Plaintiffs in error had various interests in the properties so included in the decree, as will more particularly hereinafter be set forth.

Peter K. Orrison was the owner of 160 acres of land in Adams county. December 9, 1925, by lease duly recorded on that date, he demised the land unto one K. G. Lambertson, "for the sole and only purpose of mining and operating for oil, gas, hydrocarbons and minerals of all kinds, and laying pipes, filling tanks, power stations and structures thereon, to produce, save and take care of said project, for a term of five years and as long thereafter as such minerals shall be produced by the lessee." Orrison was to receive a one-eighth part of all oil produced and other prescribed royalties on other minerals. A specified rental was to be paid unless oil wells were drilled as prescribed in the lease. The privilege of assigning in whole or in part was expressly allowed to both parties to the lease. Other provisions of the lease are immaterial for the purposes of this opinion. Lambertson assigned the lease prior to its recording, to a corporation known as the Municipal Oil Inc., one of the plaintiffs in error. The Municipal Oil Inc., entered into a contract with the Terminal Drilling Co. Inc., one of the plaintiffs in error, for the drilling of an oil and gas well upon the premises so leased. The record does not disclose the terms of the drilling contract. After the making of the drilling contract, the Terminal Company erected a standard derrick and rig upon the site, with the customary frame building. The rig was erected on concrete corners, and was equipped with rig irons, calf wheel irons, sand reel, steel crown block rig, and other parts necessary to

make a complete drilling rig. Thereafter, the Terminal Company entered into a contract with one W. E. Stringer, under the terms of which Stringer was to drill the well under the direction and supervision of the Terminal Company, and for that purpose he was to use the drilling rig or derrick which had been erected by the Terminal Company. The Terminal Company was also to furnish all pipe and casing. Stringer was to furnish all drilling tools and all other equipment and supplies. He was to receive a prescribed compensation per foot for the drilling. By the terms of the contract, Stringer agreed to file with the Terminal Company every month complete receipts for all labor and materials furnished by him. He also agreed to keep the well, derrick and land, free and clear of all laborers' and materialmen's liens.

Pursuant to this contract, Stringer brought to the location, engine, boiler, tanks, and numerous tools and other articles of equipment. He then prosecuted the work of sinking the well, until about the 9th day of July, 1926, when financial and other difficulties compelled the abandonment of the project without the completion of the well to the contemplated depth.

The defendants in error were employed by Stringer; Jones in the hauling of equipment to the location, Bell as a driller, and Shull as a tool dresser. When they went upon the job they found the rig and derrick set up. Their claims for labor aggregated approximately $3,000, and were unpaid. Plaintiff in error, Mahan McCarty & Besse, a common law trust, had taken a chattel mortgage from the Terminal Company upon the drilling rig, which chattel mortgage was not recorded until after defendants in error had commenced their work for Stringer. Plaintiff in error, Panuco Exploration Company (of which plaintiff in error Powell was an officer), claiming to be the real owner of the engine and other equipment which had been placed upon the Orrison land by Stringer, removed that equipment some months after the work had ceased.

The decree of the court directed that the leasehold interest of the Terminal Company upon the entire quarter section, together with ''the oil well thereon, and derricks, sheds, buildings and machinery, casing, equipment, tanks and tools, found in and about said well'' should be first sold to satisfy the lien. And the decree then provided that if ''the said personal property'' should not sell for a sufficient amount, then the real estate, together with the improvements thereon, other than those put there by the lessees, should be sold. It was further decreed that if the proceeds of the sale of these interests were insufficient, then the plaintiffs below should have a judgment against the Panuco Exploration Company and Powell in the sum of $2,000, which was the value found by the court, of the equipment taken from the location by those defendants.

The questions presented by the several assignments of error which are filed in support of the three separate writs of error prosecuted to the decree below, may be classified as follows: (1) Those pertaining to the validity of chapter 141, S. L. 1903, being sections 6466, 6467, C. L. 1921, and relating to liens of laborers and others on oil and gas wells, and (2) those questions which affect the validity of the liens as against particular interests in the land, leasehold estate, oil well, derrick and other equipment belonging to the several plaintiffs in error, as hereinafter set forth.

1. Defendants in error say that their liens may be sustained either under the general mechanic's lien statute, being chapter 118, Laws of 1899, as amended by chapter 116, Laws of 1915, being sections 6442-6461, inclusive, C. L. 1921; or under chapter 141, S. L. 1903, above mentioned; or under both statutes, construed in pari materia. The title of the act of 1903 reads as follows: ''An act to secure to person or persons who perform labor or furnish material, machinery or supplies, for constructing, altering, repairing, digging, boring, operating or completing gas, oil or other wells.''

Liens are provided for by section 1 of the act. And by section 2 it is provided: "That in perfecting and enforcing the right herein given, the procedure indicated in the laws of this state, and the remedies and rights given, in the statutes of and concerning 'Liens of Mechanics,' as the same may now, or in the hereafter shall exist, shall be held to apply, in so far as the same may be applicable."

Plaintiffs in error say that the title of this act does not clearly or at all express the subject, because it is not stated in the title what is secured to the persons therein described. But if the word "to" following the word "secure" be omitted, the title becomes intelligible. To secure means to make safe; to put beyond hazard of losing or not receiving. Webster's New International Dictionary. A superfluous, redundant or erroneously inserted word may be dropped from the title of an act in determining the sufficiency thereof. 36 Cyc. 1033; *Brook v. City of Blue Mound,* 61 Kan. 184, 59 Pac. 273; *Thomas v. State,* 124 Ala. 48, 27 So. 315; *State of Florida v. Green,* 36 Fla. 154, 18 So. 334. Plaintiffs in error further say that the second section of the act of 1903 violates section 24, art. 5, of our State Constitution, which provides that the provisions of no law shall be "extended or conferred by reference to its title only, but so much thereof as is revived, amended, extended or conferred, shall be re-enacted and published at length." But the rights conferred by the second section of this act are remedial and procedural only, and therefore the constitutional inhibition does not apply. *Denver Circle R. R. Co. v. Nestor,* 10 Colo. 403, 15 Pac. 714.

Again, plaintiffs in error say that the act of 1903 was repealed by chapter 164, S. L. 1911, and that the latter act, having been itself repealed by the act of 1915, hereinabove mentioned, without an express revival of the act of 1903, the act of 1903 is no longer in force, under section 6518, C. L. 1921, which provides that the repeal of the repealing act shall not revive the repealed act. The

act of 1911 gives a lien upon "oil wells or springs" along with many other descriptions of mining property, provides a complete procedure for foreclosing such liens, and repeals all acts in conflict with the act of 1911. There is no conflict between this act and that of 1903, although both give a lien upon oil wells. A lien claimant might proceed under the act of 1903 without violating any of the provisions of the act of 1911. But plaintiffs in error say that the act of 1911 repealed the act of 1903, under the rule that if the later statute is clearly intended to cover the whole subject of the first, and to prescribe the only rule which should govern the case provided for, it will be construed as repealing the original act. The rule however does not apply in the present case, because the act of 1911 makes no provision for liens upon gas wells or other wells, gives no liens upon materials and equipment as such, and has no special provisions for the leasehold and the fee estates, and all of these are provided for in the earlier statute. The later act therefore is not clearly intended as a substitute for the former, and does not cover the whole field occupied by the former. There is therefore no implied repeal of the 1903 enactment.

If the act of 1911, so far as it concerns oil wells, could be construed to supersede the provisions of the 1903 act, as to that special description of property, still the repeal of the later act would revive the provisions of the former upon that subject. The rule against implied revival applies only where the statute itself is repealed, and not where it is left in force, but certain cases are impliedly excepted from its operation by the effect of the subsequent enactment. *Heinssen v. State,* 14 Colo. 228, 23 Pac. 995; *Smith v. Hoyt,* 14 Wis. 252. The act of 1903, we hold, has not been repealed, and is not unconstitutional.

2. The liens upon the fee estate of plaintiff in error Orrison cannot be sustained. As to him, the complaint states only that he was the owner, and that he gave an oil and gas lease to the Municipal Company. This was the only relationship which he individually sustained to the

enterprise. The complaint as to him was therefore defective, and the objections which were repeatedly made to it by him should have been sustained. *Stewart v. Talbott,* 58 Colo. 563, 146 Pac. 771. See also upon the question of pleading, *Wilkins v. Abell,* 26 Colo. 462, 58 Pac. 612; *Antlers Co. v. Cunningham,* 29 Colo. 284, 68 Pac. 226; *Morrell Co. v. Princess G. M. Co.,* 16 Colo. App. 54, 63 Pac. 807. The lease, which was in evidence, shows that the drilling of the well was authorized by its terms, and Orrison was therefore not within the requirement of section 6446, C. L. 1921, for the giving of notice to prevent the lien attaching to his estate. *Stewart v. Talbott, supra; Grimm v. Yates,* 58 Colo. 268, 145 Pac. 696. In *Johnson v. Stover,* 71 Colo. 445, 207 Pac. 595, relied upon by defendant in error, the owner had not authorized the improvements. The lien claimants in the present case had no contract either directly or indirectly with Orrison, as the lessee is not by virtue of that relationship alone the statutory agent of the lessor for the making of improvements. *Stewart v. Talbott, supra.* The fact that the contract between the lessee and the drilling company was not recorded, although in excess of five hundred dollars, would not, as claimed by defendants in error, enlarge the liability of the lessor, for he was not a party to that contract. What Orrison did, as a director of the oil company, to induce the employees of Stringer to return to work, did not make him individually a party to the contract for the labor, nor enlarge the liability of his land to their liens.

3. The drilling of the well constituted an improvement upon the leasehold estate of the lessee, and one for which it had contracted. Under section 6442, C. L. 1921, Stringer, subcontractor under the driller, was the agent for the purposes of that act, of the owner of the leasehold estate who had contracted for the improvement, and such leasehold interest was clearly "assignable, transferable and conveyable" within the meaning of section 6444, Id. Under these sections of the 1899 act, which we hold to be

applicable in pari materia with the statute of 1903, the lien upon the interest of the Municipal Oil Inc. was properly sustained by the trial court.

4. The most difficult question presented upon this review arises from the claim of liens upon the derrick, rig and other equipment. Section 6442, cited supra, gives a lien to "all persons of every class performing labor upon * * * any other structure or improvement, upon land." By section 6445, Id., the provisions of the Mechanic's Lien Act, including section 6442, are made applicable to all persons who shall do work "for the working, preservation, prospecting or development of any mine, lode or mining claim or deposit yielding metals or minerals of any kind or for the working * * * in search of any such metals or minerals; and to all persons who shall do work upon * * * any shaft, tunnel * * * draining or other improvement of or upon any such * * * deposit." Section 1 of the act of 1903, being section 6466, C. L. 1921, reads as follows: "That any person or persons, company or corporation, who perform labor or furnish material or supplies for constructing, altering or repairing, or for the digging, drilling or boring, operating, completing or repairing of any gas well, oil well or any other well, by virtue of a contract. with the owner or his authorized agent, shall have a lien to secure the payment of the same upon such gas well, oil well, or such other well, and upon the materials and machinery and equipment and supplies so furnished, and in case the contract is with the owner of the lot or land, then such lien shall also be upon the interest of the owner of the lot or land upon which the same may stand, and in case the contract is with the lease holder of the lot or land then such lien shall also be upon the interest of the lease holder on the lot or land upon which the same may stand or in relation to which such material or supplies are furnished."

These various enactments manifest the intention of the legislative body to give practical security for the payment

of the claims of materialmen and laborers accruing in the drilling of wells for oil. This security is most important when the well is abandoned or proves unproductive. In such event, the lien upon the bare leasehold is of little value; a lien upon the fee is rarely obtainable (as shown in the present instance); and the lien upon the equipment as such is restricted to those who furnish it, as is held in *Poudre River Oil Corporation v. Carey,* 83 Colo. 419, 266 Pac. 201. In view of the facts that the derrick and drilling rig, with their stationary parts, are essential to the sinking of the well, and would also be useful in its operation should it prove productive, we agree with those decisions which hold such equipment to be a portion of the structure or improvement and of the oil well itself, for the purposes of the lien acts. *Haskell v. Gallagher,* 20 Ind. App. 224, 50 N. E. 485; *McElwaine v. Hosey,* 135 Ind. 481, 35 N. E. 272; *Showalter v. Lowndes,* 56 W. Va. 462, 49 S. E. 488. It is true that in the cases cited the owner of the leasehold interest was also the owner of the drilling apparatus. But in the case at bar, the Terminal Company, although not an owner of the lease or oil well (so far as the record discloses), placed its derrick and rig upon the oil well location under a contract to sink the well, itself then contracted for the completion of the job by the employer of the lien claimants, gave no notice to such employees that it claimed the right to hold its equipment free of liens, but exacted from its subcontractor indemnity on account of such liens, and permitted the lien claimants to perform labor, presumably upon the credit of the well as equipped. Under these circumstances we think the Terminal Company is estopped to assert that the derrick and rig should now be treated as detached personal property, and not as portions of the oil well and lienable structure. The liens were therefore properly sustained as against the Terminal Drilling Company Inc.

5. The property carried away from the location of the oil well by the plaintiff in error, Panuco Exploration

Company, was described in the testimony as being "tools," but from the itemized list it appears also to have included an engine and boiler and other heavy pieces of machinery. We cannot however find in the record any evidence which shows that these tools and pieces of machinery were attached to the derrick or drilling rig in such a way as to become parts of that structure; nor any evidence to show that they had any other relation to the enterprise than as portable tools and appliances which could easily have been replaced by others. We think that upon the evidence it cannot be said that they are to be regarded as parts of the oil well for the purposes of the lien statutes. If they were such, it was the duty of the plaintiffs below so to show by sufficient evidence, and in this regard we think there was a failure of proof. It was error to decree a lien against the property claimed by the Panuco Exploration Company.

For the reasons hereinabove given, the supersedeas is denied, the decree in so far as it awards a lien upon the fee estate of plaintiff in error Orrison, and in so far as it gives a judgment against plaintiff in error Panuco Exploration Company and Powell, is reversed. In all other respects the decree is affirmed. Plaintiffs in error Orrison, the Panuco Exploration Company, and Powell, shall have their costs incurred in this court.

Mr. Justice Butler dissents.

Mr. Justice Butler dissenting.

I cannot concur in the views expressed in paragraph 4 of the opinion. Upon those who assert that the derrick ceased to be personal property and became subject to the liens is cast the burden of proving that such is the fact. There is a total failure of such proof. If the lessee placed the derrick on the property for the purpose of drilling the well, and especially if it was the purpose to use it in connection with the production of oil in the event of oil being found—in other words, use it as part of the oil-producing plant—the liens would attach. In *Haskell v. Gallagher,*

20 Ind. App. 224, 50 N. E. 485, and *Showalter v. Lowndes,* 56 W. Va. 462, 49 S. E. 448, cited in the opinion, the lessee owned the derrick. In *McElwaine v. Hosey,* 135 Ind. 481, 35 N. E. 272, cited in the opinion, the exact point involved in the present case was not presented. Where the lessee owns the derrick used in his business, it is a fair inference that he intended to make the derrick a part of the oil well, in other words, a part of his oil-producing plant. *Cary Hardware Co. v. McCarty,* 10 Colo. App. 200, 50 Pac. 744; *Dawson v. Scruggs-Vandervoort Barney Realty Co.,* 84 Colo. 152, 268 Pac. 584. In the present case, no such intent can be inferred. It is not claimed that the lessee owned the derrick, or had, or had contracted to acquire, any interest in it. The Terminal Drilling Company was not the lessee, nor did it have, or contract to acquire, any interest in the lease. It merely had a contract to drill a well for the lessee. To enable it to do so, it brought its derrick and other equipment and placed them on the premises. It was not in the oil business, but in the business of drilling wells for others. There is no evidence to the effect that its oil derrick and other drilling equipment were not moved from place to place, in the regular course of the company's business, as drilling contracts were obtained. In the erection of large buildings, contractors move on to the premises their derricks and other equipment, to enable them to do the work; and when the work is ended, these are removed by the contractors to some other place, and from time to time to still other places, for use in the erection of other buildings. Are such derricks subject to liens as a part of the building? Clearly not. If there is a difference between such a case and the present one, I fail to see it; it certainly is not made to appear in either the pleadings or the evidence.