## Bickerton v. Vaughn

*J. E. Horewitz,* for plaintiff.
*E. Dale Field,* for defendant.

CARR, J., April 16, 1940. — A mechanic's lien filed against a leasehold interest in a gas well is here attacked by rule to strike off and by demurrer to an alias scire facias. The lien is claimed for labor and materials furnished at the request of the lessee, and is asserted against

all the casing, tubing, fixtures, and connections of the well, and against all the interest of the lessee in the leased land, and in the gas and oil contained therein. Defendant contends:

(a) That the gas and oil in the ground are not part of the curtilage and, being of a transitory nature, are not subject to a mechanic's lien;

(b) That the casing, tubing, fixtures, and connections of the well are not lienable, because no character of permanency can be attributed to them, since they are all as capable of use in one well as in another, and may readily be transferred from unprofitable wells where they are of no use to others where they may be of service;

(c) That the claim shows on its face that the labor and materials were not furnished for use in the structure or on its credit, but on the personal credit of defendant;

(d) That the nature of the work done and the kind and amount of the materials furnished are not set forth with sufficient precision.

By a lease made April 6, 1938, Harvey C. Graham et ux. "granted, demised, leased, and let" to Dave Vaughn "for the sole and only purpose of mining and operating for oil and gas and laying pipe lines and building tanks, towers, stations and structures thereon to produce, save and take care of said products", 40 acres of land in Menallen Township. The lease was for five years, and as much longer as oil or gas should be produced. The lessee was to deliver, free of cost, in the pipe line to which the well should be connected, the equal one-eighth part of all oil and gas produced and saved from the leased premises. If no well was commenced within 30 days, the lease was to terminate, unless a rental was paid for the privilege of deferring the commencement of a well. The lessee was granted the right at any time to remove all machinery and fixtures placed on the premises, including the right to draw and remove casing.

On July 5, 1938, Vaughn, defendant lessee, entered into an oral contract with Thomas Bickerton, claimant, by the

terms of which claimant was to supervise the drilling and construction of a gas well upon the leased premises, and to furnish all labor and materials necessary for its completion, the work to begin on or about July 12, 1938, and to continue until gas should be obtained or it could be determined that gas was not obtainable. Vaughn agreed to pay claimant $10 per day as wages for superintending the project, and in addition to pay him a reasonable sum for the use and hire of his trucks and equipment, and to repay him all moneys expended for the purchase of materials and the hiring of labor. Under this contract claimant, between July 12, 1938, and September 14, 1938, furnished labor for which he paid $365.35, materials for which he expended $212.35, trucks for hauling for which he charged $832, and superintendence at $10 a day for, as he states, 63 days, amounting to $630. On account of these sums, totaling $2,039.70, he has received $885, and for the balance of $1,154.70 has filed this lien. Annexed to the claim is a bill of particulars, made up in the form of a book account.

If defendant's objection to the inclusion of the gas and oil as curtilage were merely that the claim is filed against more land than should be justly included therein, the procedure to limit it would be by petition and rule, as allowed by section 23 of the Act of June 4, 1901, P. L. 431, 49 PS §133: Citizens Bank of Palmerton v. Lesko et al., Trustees, 277 Pa. 174; but the question here raised is so much broader that it seems proper to consider it upon the present pleadings.

Defendant's interest in the gas is an interest in real estate, assessable as such: Baird's Appeal, 132 Pa. Superior Ct. 573; and protected against the commission of waste: Westmoreland Natural Gas Co. v. DeWitt et al., 130 Pa. 235. It is, therefore, as much subject to lien as any other part of his leasehold. Although gas, like water, and to a lesser extent oil, "has a tendency to escape without the volition of the owner", and its "fugitive and wandering existence within the limits of a particular tract is

uncertain", it belongs, as Mr. Justice Mitchell said in the Westmoreland case, to the owner of the land, and is a part of it so long as it is on or in the land and subject to his control. When defendant put down a well and tapped the gas-bearing strata, he had the gas in his control, for he had only to turn a valve to have it flow into his pipe ready for use. He had possession in the legal as well as the ordinary sense of the word. His title to the gas, except the one eighth thereof, was complete.

The curtilage appurtenant to a structure or other improvement is defined by statute to be such as is reasonably needed for the general purpose for which such structure or other improvement was made: Act of 1901, supra, sec. 3, 49 PS §25. The value of the structure after its erection depends upon the ability of the owner to put it to its intended use, and if it cannot be put to such use without having the curtilage manifestly intended for it by the owner at the time he induced others to furnish labor and material for its erection, such curtilage ought to be regarded as appurtenant to it: Wirsing v. Pennsylvania Hotel & Sanitarium Co., 226 Pa. 234. In the case cited, a mechanic's lien was maintained against a sanitarium property and a lot on which there was a well or spring of water possessing valuable medicinal properties, although the lot containing the spring was separated from the sanitarium by a railroad and intervening private lands. Pipes were extended underground from one to the other, and both properties were operated and managed by the same person as a single business plant. The hotel, which was a large structure located in a small village, was chiefly for the accommodation of those who came to receive benefit from the medicinal waters of the spring, and except for the spring would have been unprofitable and would not have been built. How the gas into which defendant's well was sunk can be excluded from the curtilage as unnecessary to the enjoyment of the well is even more difficult to see, for only in connection with the gas could the well be put to any use.

Equally without merit, we think, is the contention that the lien cannot include the casing, tubing, fixtures, and connections of the well. A well consists, when ready for its useful purpose, of much more than a mere hole in the ground. To have any utility at all, it must embrace the casing, connecting tubing, appliances, and parts attached to it and essential to the operation of such a structure: Haskell et al. v. Gallagher et al., 20 Ind. App. 224, 50 N. E. 485; Brewer v. Oil Well Supply Co. et al., 126 Okla. 108, 258 Pac. 866; Terminal Drilling Co., Inc., et al. v. Jones et al., 84 Colo. 279, 269 Pac. 894; Sunburst Oil & Refining Co. v. Callender, 84 Mont. 178, 274 Pac. 834; Bovaird Supply Co. et al. v. American Tank Co. et al., 29 F. (2d) 361. While it is true that the lease provides that "the lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing", this provision must be read as a part of the whole lease, under the terms of which it cannot be supposed that immediately upon the completion of a commercial well the lessee might draw the casing and destroy the well. It is apparent that such right was given only in case gas was not discovered in paying quantities, or after the operation of the well was no longer profitable: Sunburst Oil & Refining Co. v. Callender, supra; Shellar et al. v. Shivers et al., 171 Pa. 569.

In considering the proper scope of the lien upon the structure itself and upon the curtilage, we must assume that the legislature intended to give practical security for the payment of the claims of materialmen and laborers, and that it did not intend a result that is absurd, impossible of execution, or unreasonable: Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 52, 46 PS §552.

With regard to the nature of the work done and the kind and amount of the materials furnished for which the lien was filed, an inspection of claimant's bill of particulars discloses the inclusion of some items that obvi-

ously could not have entered into the structure, and a lack of precision as to others. Under the heading "Hauling" are daily entries of the things hauled, many of which apparently are not the subject matter of a lien: Hoffman Lumber Co. v. Gibson et al., 276 Pa. 79; Oppenheimer et al. v. Morrell, 118 Pa. 189; Rush v. Abel, 90 Pa. 153; Farvo v. Merlot et al., 94 Pa. Superior Ct. 90; yet it is possible that some of the materials hauled, if more clearly identified, will appear to have been properly included. A similar uncertainty relates to the list of materials furnished. Again, in that part of the exhibit that shows the labor hired by claimant, the names of those employed are listed, but the nature and kind of work done, the times when it was done, the number of days or hours charged for, and the rate of pay are all omitted. In addition, the schedule contains a charge for telephone bills, which cannot be sustained. Finally, in claimant's own bill for superintendency, he states merely that he is entitled to compensation for 63 days from July 12, 1938, to September 14, 1938, at $10 per day. This must necessarily include all Sundays and holidays. To what extent these defects and deficiencies can be corrected, we do not know, but it seems best to grant leave to amend, in order that the merits of the entire claim may be heard at trial: McCristal v. Cochran et al., 147 Pa. 225.

The question whether claimant relied on the personal credit of defendant is purely a matter of defense. The law presumes reliance on the credit of the building, in the absence of evidence to the contrary: Rich v. Boguszinski et al., 24 Luz. L. R. Rep. 223; Catanach v. Cassidy et al., 159 Pa. 474.

### Order

And now, April 16, 1940, the rule to show cause why the lien should not be stricken from the record is discharged, defendant's demurrer is overruled, and leave is granted to claimant to amend within 15 days.