GEARHART–OWEN INDUSTRIES, INC., Plaintiff,

v.

PANHANDLE PRODUCTION COMPANY, a Colorado corporation; Robert W. McDowell, Jr., Defendants,

Halliburton Company, Defendant-Appellee,

and

Dresser Industries, Inc., Defendant-Appellant.

No. 80CA0214.

Colorado Court of Appeals, Div. I.

Oct. 30, 1980.

Rehearing Denied Dec. 11, 1980.

Certiorari Denied Feb. 17, 1981.

Shaw, Spangler & Roth, Robert C. Roth, Jr., Edward C. Moss, Denver, for defendant-appellee.

Lohf & Barnhill, P. C., Matthew D. Skeen, Denver, for defendant-appellant.

KIRSHBAUM, Judge.

Dresser Industries, Inc., appeals from the trial court's entry of summary judgment granting Halliburton Company's claim to the proceeds from the sale of certain property. We reverse.

The following facts are undisputed. Both companies supplied labor and materials to Panhandle Production Company for development of an oil and gas well. Panhandle experienced financial difficulties, and on July 9, 1976, Dresser filed a lien statement against the well pursuant to § 38–24–101, C.R.S.1973. Halliburton filed a similar lien statement on October 7, 1976. On December 6, 1976, Dresser recorded a release of its lien pursuant to an agreement with Panhandle whereby Panhandle executed a Uniform Commercial Code financing statement and security agreement naming Dresser as a secured party and listing as partial collateral 8,200 feet of oil and gas well tubing. The tubing, otherwise unencumbered, had been purchased by Panhandle from a third party. On April 11, 1977, Dresser filed its UCC financing statement and security agreement with the Secretary of State.

Plaintiff Gearhart-Owen Industries, Inc., another creditor of Panhandle, filed this action on October 5, 1976. After Halliburton and Dresser were joined as defendants, Dresser successfully petitioned the trial court, pursuant to C.R.C.P. 104, to gain immediate possession of the tubing. After an evidentiary hearing, the judge who considered this request determined that the tubing, which had been removed from the well, was readily detachable and was not a fixture. Dresser subsequently sold the tub-

ing for $8,084.95. Halliburton contends that the trial court's order of possession, added as a supplement to the record upon Dresser's request, is not material to the appeal and should not be considered by this court. However, as both Halliburton and Dresser discuss the question of whether the tubing is a fixture, we conclude that the order is material to this appeal.

Halliburton later filed a motion for reconsideration of the order of possession. Both Halliburton and Dresser then filed motions for summary judgment and a joint stipulation of facts. The stipulation did not refer to the earlier finding that the tubing was not a fixture. Halliburton's motion for summary judgment for the value of the tubing plus interest was granted by a different trial court judge. Dresser's motion was denied.

■ Dresser contends that a statutory oil and gas lien does not attach to detached personalty not supplied by the lien claimant. We agree.

Section 38–24–101, C.R.S.1973, provides in pertinent part as follows:

"Every person ... who performs labor upon or furnishes machinery, material, fuel, explosives, power, or supplies for sinking, repairing, altering, or operating any [gas well, oil well, or other well] or for constructing, repairing, or operating any [oil derrick, oil tank, oil pipeline or water pipeline, pump or pumping station, transportation or communication line, or gasoline plant and refinery] by virtue of a contract, ... shall have a lien to secure the payment thereof *upon the properties mentioned belonging to the party contracting with the lien claimants*, and upon the [machinery, materials, and supplies so furnished,] and upon any well upon and in which such machinery, materials, and supplies have been placed and used, and upon all other wells, buildings, and appurtenances, and the interest, leasehold, or otherwise, of such owner ...." (emphasis supplied)

Relying upon *Chambers v. Nation*, 178 Colo. 124, 497 P.2d 5 (1972), Halliburton argues that the statute extends the lien to all personal property and equipment owned by Panhandle regardless of the identity of the initial supplier. In *Chambers*, our Supreme Court held that a purchase money security interest in a pumper unit and sucker rods takes precedence over a pre-existing mechanic's lien on the same property. Since pumps were specified by the then applicable statute as one of the properties to which the lien attaches, the reference to the pump and rods as "personalty" by the *Chambers* court is not dispositive of the issues here presented.

Section 38–24–101 was enacted in 1929. The prior statute created a lien on the well itself, the interest of the owner or the lessee in the land on which the well was situated, and upon machinery, equipment, and supplies furnished by the lien holder. *See Colo. Sess.Laws* 1903, Ch. 141, § 1 at 355. Two 1928 cases held that an oil and gas lien filed pursuant to this statute attaches to equipment which can be deemed essential to the sinking of the well and which becomes an integral part of the well. *Terminal Drilling Co. v. Jones*, 84 Colo. 279, 269 P. 894 (1928); *Poudre River Oil Corp. v. Carey*, 83 Colo. 419, 266 P. 201 (1928).

The statutory phrase "properties mentioned" refers to "any gas well, oil well, or other well" and "any oil derrick, oil tank, oil pipeline or water pipeline, pump or pumping station, transportation or communication line, or gasoline plant and refinery ...."

■ In construing a statute, we must give effect to every word and every phrase adopted by the General Assembly. *In re Estate of Colacci*, 37 Colo.App. 369, 549 P.2d 1096 (1976). Halliburton asserts that the words "properties mentioned" also refer to the words "machinery, material, fuel, explosives, power, or supplies." Such interpretation renders meaningless the phrase "and upon the machinery, materials, and supplies so furnished" which immediately follows these words. We thus conclude that the statutory term "properties" does not include additional unspecified items acquired by the debtor from third parties, which

items have not become integral parts of the well. *See Dufford & Helmick, Mechanics' Liens Relative to Oil and Gas Operations-Part II, 34 Dicta* 373 (1957).

We do not agree with Halliburton's argument that the language of the present statute indicates that the 1929 General Assembly intended to expand substantially the category of property to which such liens could attach. In view of the restrictive definition of the relevant statutory language established in the then recently decided *Poudre River Oil Corp.* and *Terminal Drilling Co.* cases, had the General Assembly intended so sweeping a change, it would have indicated such intent in some fashion.

Halliburton further contends that the tubing is in fact a fixture to which its lien attaches. The lien defined by § 38–24–101 does attach to items which, while initially "personalty," become so integrated into the well that they may be deemed fixtures. *Terminal Drilling Co. v. Jones, supra.* However, the judge who entered the order of possession concluded, after an evidentiary hearing, that the tubing here involved was not a fixture. Halliburton has not provided this court with any portion of the record to suggest that the evidence did not support such factual determination, and the stipulation presented in connection with the summary judgment motions does not indicate any dispute over that determination. Under these circumstances, we have no basis to reverse the trial court's factual determination on appeal. *Till v. People,* 196 Colo. 126, 581 P.2d 299 (1978). *Wood v. Rowland,* 41 Colo.App. 498, 592 P.2d 1332 (1978).

We also reject Halliburton's final contention that § 38–24–103, C.R.S.1973, establishes the priority of its lien over Dresser's security interest. That section provides that "[n]o chattel mortgage or security interest shall be valid as against any person, firm, or corporation entitled to a lien under the provisions of this article . . . ." Here Halliburton was not entitled to a lien on the tubing.

The trial court's judgment is reversed and the cause is remanded with directions to enter an order authorizing Dresser to retain the proceeds of the sale of the tubing.

COYTE and VAN CISE, JJ., concur.